**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOSHUA AARON,
ALL U CHART, INC.,

               *Plaintiffs*,

    v.

PAMELA J. BONDI, *et al.*,

               *Defendants*.

No. 1:25-cv-04250-DFL

**<u>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 2

    I.    Plaintiffs' Complaint ........................................................................... 2

    II.    Legal Context ...................................................................................... 3

        A.    The Supreme Court's Decision in *Murthy v. Missouri* ............... 4

        B.    The Supreme Court's Decision in *NRA v. Vullo* ........................ 4

LEGAL STANDARD .................................................................................................. 6

ARGUMENT ............................................................................................................. 7

    I.    Plaintiffs Have Not Established Article III Standing ............................ 7

        A.    Plaintiffs Lack Standing to Assert a First Amendment Coercion Claim Against Any Defendant .................................... 8

        B.    Plaintiffs Lack Standing to Assert a First Amendment Retaliation Claim Against Any Defendant ............................... 14

        C.    The 10 Doe Defendants Must be Dismissed Where Plaintiffs Do Not Allege Specific Instances of Challenged Conduct by the Federal Officials ................................................................ 19

    II.    Plaintiffs Have Not Stated a First Amendment Coercion Claim ......... 20

    III.    Plaintiffs Have Not Stated a First Amendment Retaliation Claim ...... 22

CONCLUSION .......................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*,
No. 25-CV-4505 (BAH), 2026 WL 80796 (D.D.C. Jan. 11, 2026).........................................24

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016) ................................................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................................6

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963)......................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................6, 11

*Bennett v. Hendrix*,
423 F.3d 1247 (11th Cir. 2005) ..............................................................................................23

*Block v. Meese*,
793 F.2d 1303 (D.C. Cir. 1986) ..............................................................................................25

*Brownback v. King*,
592 U.S. 209 (2021)...................................................................................................................6

*California v. Texas*,
593 U.S. 659 (2021).............................................................................................................13, 18

*Changizi v. Dep't of Health & Hum. Servs.*,
82 F.4th 492 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2716 (2024).......................................11

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983).....................................................................................................................7

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).............................................................................................................16, 18

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)...................................................................................................................6

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024).............................................................................................................7, 18

*Hart v. Facebook, Inc.*,
No. 23-15858, 2024 WL 1693355 (9th Cir. Apr. 19, 2024) .................................... 11

*Hartman v. Moore*,
547 U.S. 250 (2006) .................................................................................... 23, 25

*Houston Cmty. College Sys. v. Wilson*,
595 U.S. 468 (2022) .................................................................................... 23, 25

*Jones v. Kane*,
No. 18-CV-612 (RDM), 2020 WL 977970 (D.D.C. Feb. 28, 2020), *aff'd sub nom.*,
No. 20-5067, 2021 WL 4305888 (D.C. Cir. Apr. 27, 2021) .................................... 19

*Laird v. Tatum*,
408 U.S. 1 (1972) ...................................................................................... 16, 17

*Landwehr v. FDIC*,
No. 09–0716 (RMU), 2010 WL 2572077 (D.D.C. June 28, 2010) ......................... 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......................................................................................... 7

*Media Matters for Am. v. Paxton*,
138 F.4th 563 (D.C. Cir. 2025) ............................................... 18, 23, 24, 25

*Meese v. Keene*,
481 U.S. 465 (1987) ........................................................................................ 17

*Murthy v. Missouri*,
603 U.S. 43 (2024) ................................................................................. *passim*

*Nieves v. Barlette*,
587 U.S. 391 (2019) ........................................................................................ 23

*NRA v. Vullo*,
602 U.S. 175 (2024) ............................................................................... *passim*

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ........................................................................................ 12

*Penthouse Int'l, Ltd. v. Meese*,
939 F.2d 1011 (D.C. Cir. 1991) ...................................................................... 25

*Perry v. Sindermann*,
408 U.S. 593 (1972) ........................................................................................ 23

*Segelstrom v Citibank, N.A.*,
　76 F. Supp. 3d 1 (D.D.C 2014), *aff'd*, 617 F. App'x 4 (D.C. Cir. 2015) ................................... 19

*Simon* v. *E. Ky. Welfare Rts. Org.*,
　426 U.S. 26 (1976) ................................................................................................. 11

*Socialist Workers Party v. Att'y Gen.*,
　419 U.S. 1314 (1974) ........................................................................................ 16, 17

*Steel Co. v. Citizens for a Better Env't*,
　523 U.S. 83 (1998) ................................................................................................... 6

*Susan B. Anthony List v. Driehaus*,
　573 U.S. 149 (2014) ................................................................................................ 18

*TransUnion LLC v. Ramirez*,
　594 U.S. 413 (2021) .............................................................................................. 7, 9

*United States v. Nixon*,
　418 U.S. 683 (1974) ................................................................................................ 25

*United States v. Texas*,
　599 U.S. 670 (2023) .................................................................................................. 7

**RULES**

Fed. R. Civ. P. 12 ....................................................................................................... 6

**INTRODUCTION**

Plaintiffs—Joshua Aaron (Aaron), a software developer who created an iPhone application permitting the public tracking of ICE agents, and ALL U Chart, Inc., the corporation that owns the application's intellectual property—claim federal officials' public comments and a meeting between Attorney General Bondi and Apple improperly pressured Apple to remove ICEBlock from the App Store. They claim the same public comments of Attorney General Bondi, DHS Secretary Noem, ICE Acting Director Lyons, and Border Czar Homan constitute retaliation. Plaintiffs allege both First Amendment coercion and First Amendment retaliation claims. Both claims fail.

At the outset, Plaintiffs lack standing to bring their First Amendment coercion claim under the Supreme Court's decision in *Murthy v. Missouri*. First, Plaintiffs simply assume public comments by Defendants Noem, Lyons, and Homan criticizing the ICEBlock App and CNN's promotion of the App caused Apple's content moderation and, in doing so, fail to sufficiently allege traceability as to the three officials. Second, Plaintiffs fail to untangle Defendants' public comments and Attorney General Bondi's communication with Apple from Apple's "independent incentives to moderate content," *Murthy v. Missouri*, 603 U.S. 43, 60 (2024)—especially relevant here, where Plaintiffs allege Apple determined ICEBlock violated its own App Store Guidelines. Additionally, Plaintiffs fail to allege the "ongoing pressure campaign" the Supreme Court explained is necessary to establish standing for prospective relief in the First Amendment coercion context. *Id.* at 69.

Plaintiffs' First Amendment retaliation claim must also be dismissed on standing grounds where Plaintiffs allege harm as a result of Defendants' collective statements—including statements concerning non-Plaintiffs—rather than establishing "specific causation" as to each Defendant. *Id.* at 61. Plaintiffs also fail to satisfy Article III's injury in fact requirement, alleging only subjective chill and speculation about future enforcement actions as a result of Defendants' alleged "retaliatory" statements. And finally, where Plaintiffs fail to allege a sufficient likelihood

of imminent, concrete injury, they have not established standing for the prospective relief they seek.

Even if this Court finds Plaintiffs have sufficiently alleged standing to bring either First Amendment claim—and they have not—Plaintiffs' claims fail on the merits. Under *NRA v. Vullo*, they fail to state a viable First Amendment coercion claim because they do not allege communications by Defendants that could be "reasonably understood to convey a threat of adverse government action" against Apple if Apple chose not to remove ICEBlock from the App Store. 602 U.S. 175, 177 (2024). Plaintiffs' coercion claim misses the mark. First, Plaintiffs allege communication between Attorney General Bondi and Apple, but their Complaint contains nothing more than conclusory allegations about the *content* of those communications. Second, Plaintiffs focus on statements by Defendants critical of *Aaron* and *CNN*, rather than statements directed at *Apple*. Plaintiffs do not allege the threatening governmental action that the Supreme Court found to be necessary (and dispositive) in *Vullo*. As such, Plaintiffs' coercion claim fails.

Plaintiffs similarly fail to state a viable First Amendment retaliation claim. They do not allege that any Defendant has engaged in concrete "adverse action" in response to Plaintiff Aaron's speech. Instead, all they point to is Defendants' speech criticizing the ICEBlock app and its promotion. But government criticism of a citizen's speech is not constitutionally impermissible. Such commentary does not constitute unconstitutional retaliation. Thus, Plaintiffs' retaliation claim fails.

## BACKGROUND

### I.    Plaintiffs' Complaint

On December 8, 2025, Plaintiffs brought this suit against Defendants Pamela Bondi, in her official capacity as Attorney General of the United States; Kristi Noem, in her official capacity as Secretary of the United States Department of Homeland Security (DHS); Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement (ICE); Thomas Homan, in his official capacity as White House Border Czar; and ten John Doe

Federal Officials, each acting in their official capacities. ECF No. 1 (Compl.). Aaron is a software developer and the founder and creator of the ICEBlock application ("ICEBlock" or the "App"), *id*. ¶ 21, an iPhone application that "allows members of the public to report publicly observable locations of [ICE] agents," *id*. ¶ 2. ICEBlock became available for free download in Apple's App Store in April 2025. *Id*. ¶ 7. ALL U Chart is a corporation that owns all intellectual property associated with the ICEBlock application. *Id*. ¶ 22. Plaintiffs allege that, primarily between June 30, 2025 and October 8, 2025, Defendants made "unconstitutional threats and demands against Apple, which pressured it to remove the ICEBlock App from the App Store[,] resulting in censorship of Aaron and ALL U Chart's speech." *Id.* ¶ 16. Plaintiffs further allege that the federal government officials made "unlawful threats. . . .to criminally investigate and prosecute Aaron for his role in developing ICEBlock," intended to chill Aaron's freedom of expression and to deter the amplification of his free speech. *Id.* ¶ 17. Plaintiffs allege that these actions violate the First Amendment. *See id.* ¶¶ 128-30, 137, 140.Plaintiffs bring two counts: a First Amendment coercion claim ("First Claim for Relief"), *id*. ¶¶ 120-32, and a First Amendment retaliation claim ("Second Claim for Relief"), *id.* ¶¶ 133-43.

Plaintiffs ask this Court to "declare unlawful Defendants' coercion of a private party to remove ICEBlock from the App Store and to enjoin Defendants from threatening or pressuring any would-be distributor of ICEBlock." *Id.* ¶ 18; *see also* ¶ 132. Plaintiff Aaron "further seeks a declaration that Defendants' threats of prosecution directed at him for developing, distributing, and promoting ICEBlock violated the First Amendment, and an injunction prohibiting Defendants from threatening, investigating, or prosecuting him for these protected expressive activities." *Id*.; *see also id.* ¶ 143.

## II.    Legal Context

This case is controlled by two recent Supreme Court decisions: (1) *Murthy*, which sets the standards for Article III standing for allegations that the government is coercing third-party platforms to censor free speech; and (2) *Vullo*, which governs the substantive requirements for a viable First Amendment coercion claim.

### A.  The Supreme Court's Decision in *Murthy v. Missouri*

In June 2024, the Supreme Court decided in *Murthy*, in which the Court concluded that Plaintiffs lacked standing to claim the Government coerced social media platforms to censor plaintiffs' posts regarding COVID-19 and the 2020 election. *See* 603 U.S. 43. The Court reasoned that to establish standing "the plaintiffs must show a substantial risk that, in the near future, at least one platform will restrict the speech of at least one plaintiff in response to the actions of at least one Government defendant." *Id.* at 58. "And even where the plaintiff, platform, time, content, and defendant line up, the links must be evaluated in light of the platform's independent incentives to moderate content." *Id.* at 61.

The Court determined that the plaintiffs failed to make that requisite showing. *First*, the Court concluded that the plaintiffs had not established "specific causation" because they had failed to show "that a particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic." *Id.* at 59-61. Assessing the asserted "direct censorship injuries" on a plaintiff-by-plaintiff, defendant-by-defendant, and platform-by-platform basis, the Court concluded that no plaintiff had standing to claim that past injuries were traceable to the Government's conduct. *Id.* at 58-68.

*Second*, the Supreme Court emphasized that plaintiffs failed to show "a real and immediate threat of repeated injury," as required to obtain prospective relief. *Id.* at 58 (citation omitted). Thus, "without proof of an ongoing pressure campaign," the Supreme Court determined it was "entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants." *Id.* at 69.

### B.  The Supreme Court's Decision in *NRA v. Vullo*

In May 2024, the Supreme Court handed down its judgement in *Vullo*, in which the court held that the National Rifle Association of America (NRA) plausibly alleged that Vullo, the superintendent of the New York Department of Financial Services (DFS), violated the First Amendment by coercing DFS-regulated entities to terminate their business relationships with the NRA in order to punish or suppress its gun-promotion advocacy. *See* 602 U.S. 175.

4

The Court outlined that "to state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *Id*. at 177 (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67-68 (1963)). In other words, "[w]hen government officials are engaging in their own expressive conduct," "the Free Speech Clause has no application[,]" but "a government official cannot directly or indirectly coerce a private party to punish or suppress disfavored speech on her behalf." *Id*. at 176-77 (citation omitted).

The Supreme Court explained that the objective inquiry of "whether a reasonable person would perceive a government official's communications as coercive"—thus crossing the line from permissible expression and persuasion to impermissible coercion in violation of the First Amendment—requires looking to: (1) the government official's authority, (2) the communications between the government official and the entity, and (3) the coerced party's reaction. *See Id*. at 191-93.

*First*, the Court outlined that, while "the power that a government official wields" "is not dispositive," "the greater and more direct the government official's authority, the less likely a person will feel free to disregard a directive from the official." *Id*. at 191-92. As DFS superintendent, "Vullo had direct regulatory and enforcement authority over all insurance companies and financial service institutions doing business in New York[,]" *id*. at 192, and "the power to initiate investigations and civil enforcement actions" and "to refer matters for criminal prosecution[,]" *id*. at 175.

*Second*, the Court found Vullo's alleged communications with DFS-regulated entities could "be reasonably understood as a threat or as an inducement" constituting coercion, although Vullo did not explicitly threaten prosecution for failure to aid in "DFS's campaign against gun groups." *Id*. at 193. Plaintiffs emphasized numerous, specific alleged communications in their complaint. *See id*. at 176, 192-93.  These communications included a private meeting with insurance executives during which Vullo pointed to a variety of infractions that DFS would be

5

"be less interested in pursuing" if the regulated insurance entities "ceased providing insurance to gun groups, especially the NRA." *Id*. at 192 (cleaned up). Vullo also told the executives she would "'focus' her enforcement actions 'solely' on the syndicates with ties to the NRA." *Id*. Vullo also issued guidance letters in which she encouraged DFS-regulated entities to consider their "reputational risks," "including those that may arise from their dealings with the NRA," and encouraged the entities to "take prompt actions to manag[e] these risks" by discontinuing their arrangements with the NRA. *Id*. at 176.

*Third*, the Court considered the regulated entities' reaction to Vullo's actions, which was to quickly terminate all insurance related to the NRA. *Id*. at 193.

## LEGAL STANDARD

Defendants move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), Plaintiffs bear the burden to establish subject matter jurisdiction, which must "be established as a threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 104 (1998). The Court "presume[s]" to "lack jurisdiction" unless the plaintiff meets their "burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quotations omitted)); *see Brownback v. King*, 592 U.S. 209, 217 (2021) (plaintiff "must plausibly allege all jurisdictional elements"). If that burden is not met, the Court "must dismiss the action" or the affected claim. Fed. R. Civ. P. 12(h)(3).

To withstand a motion to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a court must disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" and determine whether the remaining "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## ARGUMENT

### I.    Plaintiffs Have Not Established Article III Standing.

Standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023). Under Article III, "the irreducible constitutional minimum" requires that (1) the plaintiff has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there must exist "a causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). "[S]tanding is not dispensed in gross," meaning "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

"[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). This is true even when a plaintiff has established past injury. A previously injured plaintiff must establish a "'real and immediate threat of repeated injury' demonstrated by more than 'past exposure to illegal conduct.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Those familiar Article III principles resolve this case in Defendants' favor.

*First*, Plaintiffs' First Amendment coercion claim must be dismissed on standing grounds pursuant to the Supreme Court's decision in *Murthy*. Plaintiffs simply assume Apple understood public statements criticizing the ICEBlock App and CNN as threatening adverse government action against Apple, thereby failing to establish traceability as to Defendants Noem, Lyons, and Homan. And Plaintiffs fail to sufficiently allege that Apple did not have "independent incentives to moderate content," 603 U.S. at 60. Even if Plaintiffs have adequately tied Apple's content moderation decision to any particular Defendant, Plaintiffs do not allege an "ongoing pressure campaign," as is required to obtain prospective relief in the First Amendment coercion context. *Id*. at 69.

*Second*, Plaintiffs' First Amendment retaliation claim must also be dismissed on standing grounds where Plaintiffs fail to allege specific causation; and where Plaintiffs fail to satisfy Article III's injury in fact requirement, alleging only subjective chill and speculative future enforcement actions as a result of Defendants' "retaliatory" statements. And, because Plaintiffs fail to allege a sufficient likelihood of imminent, concrete injury as a result of Defendants' statements, they have not established standing for the prospective relief they seek.

*Third*, the 10 "Doe Defendants" must be dismissed where Plaintiffs make no specific allegations about the unidentified federal officials' participation in the challenged actions.

As such, the Court must dismiss each of Plaintiffs' claims for lack of subject-matter jurisdiction, and must dismiss the 10 Doe Defendants.

### A. Plaintiffs Lack Standing to Assert a First Amendment Coercion Claim Against Any Defendant.

Plaintiffs' First Amendment coercion claim fails on standing grounds and must be dismissed under the Supreme Court's analysis in *Murthy*. Plaintiffs claim that Defendants coerced Apple, a private entity, to censor Aaron's protected speech, thus violating his First Amendment rights. *See* Compl. ¶¶ 120-32. But Plaintiffs merely assume Defendant Noem's, Lyons's, and Homan's comments critiquing ICEBlock and CNN's coverage of the App—absent any reference to Apple—caused Apple's moderation of Plaintiffs' content. As such, they fail to establish traceability as to these Defendants. Additionally, Plaintiffs fail to sufficiently allege facts to establish that Apple did not remove ICEBlock from the App Store as a result of Apple's "independent incentives to moderate content," *id*. at 60, rather than as a result of actions by any particular Defendant. Finally, even if this Court finds Plaintiffs have sufficiently alleged standing against any Defendant based on past coercion harms—and they have not—it must nevertheless dismiss Plaintiffs' coercion claim because Plaintiffs fail to allege the "ongoing pressure campaign" the Supreme Court explained is necessary to establish standing for prospective relief in the First Amendment coercion context. *Id*. at 69. Plaintiffs' own time-limited allegations

demonstrate that any future harm to them was entirely speculative at the time they filed their Complaint.

Glaringly absent from Plaintiffs' Complaint is any assertion that Defendants Noem, Lyons, or Homan made public comments directed at Apple or engaged in direct communication with Apple—let alone communication that threatened adverse government action should Apple decide not to remove ICEBlock from the App Store. Instead, Plaintiffs assert that Defendants Noem, Lyons, and Homan allegedly describing Aaron and non-party CNN as acting illegally was "reasonably understood to convey a threat of adverse government action against any entity making the App available[,]" such that Apple was pressured "to remove the App and others like it from the App Store." Compl. ¶ 125. But "*plaintiffs* bear the burden to establish standing by setting forth 'specific facts'" and courts should not "draw[] links that [Plaintiffs] [themselves] ha[ve] not set forth." *Murthy*, 603 U.S. at 68 n.7 (citation omitted). Missing here is any allegation that Apple understood Defendants' statements characterizing *Aaron's* and *CNN's* actions as threating government action against *Apple*. Because a plaintiff claiming censorship based on Government coercion of a third party must allege facts supporting a causal relationship between the alleged censorship and the actions of each defendant, Plaintiffs' failure to demonstrate a connection between statements made by Defendants Noem, Lyons, and Homan, and Apple's content moderation decision dooms Plaintiffs' assertion of standing as to these Defendants. *See Murthy*, 603 U.S. at 61 ("Because 'standing is not dispensed in gross,' 'plaintiffs must demonstrate standing for each claim they press' *against each defendant*[.]'" (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphasis added)).

Plaintiffs lack standing to bring a First Amendment coercion claim against *any* Defendant because of another shortcoming: they fail to plead facts that would establish that Apple did not remove ICEBlock from the App Store as a result of Apple's "independent incentives to moderate content," *Murthy*, 603 U.S. at 60, in accordance with pre-existing App Store Guidelines. In other words, Plaintiffs fail to allege that the harms they claim to experience as a result of ICEBlock being removed from the App Store—namely, suppression of Aaron's speech, "loss of

9

distribution channels, reputational harm, and diminished audience reach, and ongoing chilling, Compl. ¶¶ 125, 129—are not attributable to Apple's independent choice to remove the App. Indeed, Plaintiffs allege that a public statement from Apple, as well as two communications Apple sent to Aaron, consistently explain that Apple removed ICEBlock from the App Store pursuant to the threat posed to law enforcement in violation of Apple's own pre-existing Guidelines. *Id*. ¶¶ 108-11. According to Plaintiffs, on October 2, 2025, Apple issued a public statement outlining that the company removed the ICEBlock App from the App Store "[b]ased on information [Apple] received from law enforcement about the safety risks associated with ICEBlock." *Id*. ¶ 108. Plaintiffs further outline that a communication sent to Aaron by Apple on the same date explains that "[i]nformation provided to Apple by law enforcement shows that [the] app violates [App Store] Guideline 1.1.1 because its purpose is to provide location information about law enforcement officers that can be used to harm such officers individually or as a group." *Id*. ¶ 109. Without more, Plaintiffs allege that the "message [Aaron] received from Apple . . . makes clear that Apple rescinded its approval of ICEBlock because of Defendant Bondi and DOJ officials." *Id*. Missing is any allegation to establish that Apple's moderation decision was not the result of Apple's own business considerations, even those informed by governmental communications.

Next, Plaintiffs allege that, on October 2, 2025, Attorney General Bondi "stated on Fox News: 'We reached out to Apple today demanding they remove the ICEBlock app from their App Store—and Apple did so.'" *Id*. ¶ 113. They assert that, the next day, a second communication from Apple to Aaron on October 3, 2025 reiterated that "information provided to Apple by law enforcement shows that your ICEBlock App violates Guideline 1.1.1 because its purpose is to provide location information about law enforcement that can be used to harm such officers individually or as a group." *Id*. ¶ 111. Missing are allegations establishing that Apple did not exercise its discretion to remove ICEBlock after receiving evidence of safety risks the App poses to law enforcement officers. Finally, Plaintiffs' assertion that the ICEBlock App was previously reviewed and approved by Apple, *id*. ¶¶ 81-91, does not eliminate the likelihood that,

when presented with evidence of serious safety risks posed to law enforcement, Apple chose to reevaluate the App's compliance with its App Store Guidelines. Indeed, Plaintiffs' allegations as to Apple's initial review of ICEBlock indicate Apple was hesitant to publish the App. *Id*. ¶ 86 (outlining that "Apple had initially rejected ICEBlock for publication").

A federal court cannot redress "injury that results from the independent action of some third party not before the court." *Simon* v. *Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976). Plaintiffs here, therefore, face an insurmountable hurdle where they do not plausibly allege that any specific Defendant's statement or action caused Apple to remove the App rather than the alternative explanation that Apple was provided with relevant law enforcement information and resultantly made an independent content moderation decision of its own accord based on longstanding App Store Guidelines. *See Murthy*, 603 U.S. at 64 (finding unlikely plaintiff's injuries were traceable to defendant government agency when Twitter removed plaintiff's post according to the platform's pre-existing policy against posting private, intimate media without subject's express consent).

As the Supreme Court has explained, a complaint must allege facts "plausibly suggesting" illegal conduct such that the allegations are no longer in "neutral territory." *Twombly*, 550 U.S. at 557. Ultimately, Plaintiffs' allegations are, at best, "neutral" as to whether Apple exercised its "independent judgment" based on its "independent incentives to moderate content," or was "coerced" into content moderation by the Government. *Murthy*, 603 U.S. at 60.

Other courts have held, for similar reasons, that plaintiffs had failed to plead standing to pursue similar claims. *See Changizi v. Dep't of Health & Hum. Servs*., 82 F.4th 492, 497 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2716 (2024) (holding, at the pleading stage, that the plaintiffs lacked standing because they "fail to adduce facts demonstrating that the decisions Twitter made when it enforced its own COVID-19 policy did not result from its 'broad and legitimate discretion' as an independent company"); *see also Hart v. Facebook, Inc.*, 2024 WL 1693355, at *3 (9th Cir. Apr. 19, 2024) ("Because [the plaintiff] has not plausibly alleged that Twitter and Facebook acted at the behest of the Federal Defendants—as opposed to pursuant to their own

policies—he has not shown that a favorable judicial decision against the Federal Defendants would provide him any relief.").

Finally, even if Plaintiffs have sufficiently alleged past harm traceable to any particular Defendant, they nevertheless fail to allege likely future injury needed to justify the prospective injunctive relief they seek. Plaintiffs ask the Court to (1) "[d]eclare that Defendants' actions coercing, threatening, or demanding that Apple stop distributing the App via the App Store violate Plaintiffs' rights under the First Amendment[,]" and (2) "[p]ermanently enjoin Defendants. . . .from coercing, threatening, or demanding Apple or other app distribution services in order to stop distribution of the App[.]" *Id.* ¶¶ 144, 146. But, as *Murthy* explains, to obtain forward-looking relief against Government coercion on the basis of alleged past episodes of coercion, plaintiffs are required to show "a substantial risk of *future* injury that is *traceable to the Government defendants* and likely to be redressed by an injunction against them." 603 U.S. at 58 (emphasis added). Plaintiffs must face "a real and immediate threat of repeated injury." *O'Shea* v. *Littleton*, 414 U.S. 488, 496 (1974). In other words, Plaintiffs must do more than make allegations of past injury. *See id.* at 495–96 ("Past exposure to illegal conduct" can serve as evidence of threatened future injury but "does not in itself show a present case or controversy regarding injunctive relief.")

Specifically, in the First Amendment coercion context, Plaintiffs must allege "an ongoing pressure campaign" by the Government without which it is "entirely speculative that the platforms' future moderation decisions [would] be attributable, even in part, to the defendants," and there would be no basis for injunctive relief. *Murthy*, 603 U.S. at 69. Here, Plaintiffs must sufficiently allege that Defendants were, at the time the Complaint was filed, actively pressuring Apple to *keep* ICEBlock out of the App Store. In other words, Plaintiffs must sufficiently allege that, if not for continued pressure from Defendants, Apple would restore ICEBlock to the App Store. Plaintiffs' allegations fall short of meeting this threshold where Plaintiffs do not assert "a substantial risk that, in the near future, [Apple] will restrict [their] speech . . . in response to the actions of at least one Government defendant." *Id.* at 58.

12

Plaintiffs' allegations focus entirely on public statements made by Defendants between June 30, 2025 and October 8, 2025. *See, e.g.*, Compl. ¶¶ 96-104 (alleging that, on June 30, 2025, Defendants Lyons, Homan, Bondi, and Noem publicly spoke about ICEBlock and CNN's coverage of the App); *id.* ¶ 105 (alleging Defendant Noem spoke about CNN's coverage of the ICEBlock App on July 1, 2025); *id.* ¶¶ 108-09 (alleging "Apple removed ICEBlock and a number of other ICE tracking apps from the App Store," issued a public statement announcing its decision to do so, and sent Aaron a message via the Developer Portal explaining its decision on October 2, 2025); *id.* ¶ 111 (alleging Apple replied to an inquiry from Aaron confirming that Apple removed ICEBlock because the App violates App Store Guidelines on October 3, 2025); *id.* ¶ 113 (alleging Defendant Bondi announced publicly that she spoke with Apple on October 2, 2025); *id.* ¶ 114 (alleging Defendant Bondi testified before the Senate Judiciary Committee that she spoke with Apple and Google about removing the ICEBlock App on October 7, 2025); *id.* ¶ 116 (alleging Defendant Bondi stated during a public speech that she spoke with Apple and Google about taking down the ICEBlock App on October 8, 2025). And yet, Plaintiffs did not bring their suit until December 2025. Plaintiffs' own allegations thus fail to plausibly assert that, by the time they filed their Complaint, "they [were] likely to face a risk of future censorship traceable to the [Defendants]." *Murthy*, 603 U.S. at 73 (Plaintiffs face a fatal "redressability problem . . . [because] without evidence of *continued* pressure from the defendants, . . . the platforms remain free to enforce, or not to enforce, those policies—even those tainted by initial governmental coercion." (emphasis added)). Due to Plaintiffs' own temporally limited allegations, their claim for prospective relief falters.[1]

Because Plaintiffs lack standing to bring a First Amendment coercion claim against any Defendant, the Court must dismiss their First Claim for Relief.

---

[1] Because this Court lacks jurisdiction to issue injunctive relief, it also lacks jurisdiction to issue declaratory relief, which "would amount to an advisory opinion without the possibility of any judicial relief." *California v. Texas*, 593 U.S. 659, 673 (2021) (citation omitted).

### B.  Plaintiffs Lack Standing to Assert a First Amendment Retaliation Claim Against Any Defendant.

Plaintiffs claim that "Defendants violated Aaron's First Amendment rights by threatening Aaron . . . with criminal prosecution based on his lawful development, distribution, and promotion of the App." Compl. ¶ 137. Plaintiffs' First Amendment retaliation claim, brought on behalf of Plaintiff Aaron,[2] fails on standing grounds and must be dismissed. First, Plaintiffs fail to sufficiently allege specific causation where they do not allege that *each* Defendant characterized the ICEBlock App as unlawful and called for Aaron's criminal prosecution. Additionally, the Supreme Court and D.C. Circuit have made clear that the sole injury Plaintiffs allege as a result of Defendants' "retaliatory threats"—subjective chilling—is an inadequate substitute for a claim of present or imminent concrete harm necessary to establish injury in fact. And, because Plaintiffs fail to allege a sufficient likelihood of imminent, concrete injury—in the form of a bad-faith criminal investigation, retaliatory prosecution, or otherwise—they have not established standing for the prospective relief they seek.

Plaintiffs assert that Defendants retaliated against Aaron because, "[w]ithin hours of CNN's feature of ICEBlock, each of the Defendants falsely claimed that Plaintiffs were engaged in criminal conduct and were inviting violence against law enforcement officers," Compl. ¶ 97, and "Defendants . . . threaten[ed] Aaron . . . with criminal prosecution based on his lawful development, distribution, and promotion of the App." *Id*. ¶ 137. But Plaintiffs' retaliation claim necessarily suffers the same fate as their coercion claim where Plaintiffs, once again, fail to

---

[2] Plaintiffs "Second Claim for Relief" is brought against all Defendants for "Threatened Prosecution for Protected Speech" and asserts that "Defendants violated Aaron's First Amendment rights by threatening Aaron, an individual citizen, with criminal prosecution based on his lawful development, distribution, and promotion of the App." Compl. ¶ 137. Plaintiffs further assert that "Defendants' threats were intended to deter Aaron from engaging in further protected speech," *id*. ¶ 139, and "Aaron is suffering and will continue to suffer irreparable harm as a result of Defendants' unconstitutional actions[.]" *Id*. ¶ 141. Absent any assertion that Defendants threatened or caused harm to Plaintiff ALL U Chart, Inc., the Government understands Plaintiffs' First Amendment retaliation claim to be brought only on behalf of Plaintiff Aaron. To the extent it is intended to cover both plaintiffs, it should be dismissed against ALL U Chart, Inc. for lack of standing.

allege specific facts to establish traceability on a Defendant-by-Defendant basis, *Murthy*, 603 U.S. at 61. Crucially, nowhere do Plaintiffs allege that Defendants Lyons, Homan, or Noem called for *Aaron's* investigation or prosecution, or that these Defendants characterized Plaintiffs' speech as criminal. Instead, in an attempt to substantiate their retaliation claim, Plaintiffs allege statements by these Defendants that largely concern a non-party to the suit: CNN. Plaintiffs allege that Defendant Lyons criticized *CNN's* promotion of the App and "suggested that DOJ would look into the matter 'to see exactly what we can do' to stop *CNN* from 'promoting' the App." Compl. ¶ 98 (emphasis added). Plaintiffs then assert that Defendant Homan "call[ed] for DOJ to investigate whether *CNN* crossed a line," and assert that this statement somehow "falsely implied that Plaintiffs' protected speech was illegally endangering law enforcement officers." *Id.* ¶ 99 (emphasis added). And, Plaintiffs allege that, when asked "whether ICEBlock and CNN were engaged in criminal wrongdoing, Homan stated 'DOJ is looking at it.'" *Id.* ¶ 100. Finally, Plaintiffs allege that "Defendant Noem posted on X that ICEBlock 'sure looks like obstruction of justice[,]'" and stated that "DHS was 'working with the Department of Justice to see if we can prosecute [*CNN*] for [the ICEBlock story], because. . . .'what they're doing [i.e., CNN], we believe, is illegal." *Id.* ¶ 104-05 (emphasis added). Without more, Plaintiffs do not sufficiently allege that Defendants Lyons, Homan, or Noem definitively characterized Aaron's speech as criminal or called for Aaron's prosecution. Plaintiffs, therefore, fail to allege traceability as to these three officials.

As to Attorney General Bondi, Plaintiffs assert that she stated in a television interview that Aaron was "giving a message to criminals where our federal officers are. And he cannot do that. And we are looking at it, we are looking at him, and he better watch out because that's not protected speech. That is threatening the lives of our law enforcement officers throughout this country." *Id.* ¶ 101. Plaintiffs further allege that, on October 7, 2025, Attorney General Bondi stated in her testimony before the Senate Judiciary Committee that the ICEBlock App "was reckless *and criminal* in that people were posting where ICE officers [worked]." *Id.* ¶ 114 (emphasis in original). Even if Plaintiffs sufficiently allege that Attorney General Bondi believed

15

the App to be unlawful and warranting of a closer look due to safety threats posed to law enforcement officers, Plaintiffs lack standing to bring a retaliation claim where they fail to allege concrete injury resulting from these statements.

A proper case or controversy exists only when at least one plaintiff "establish[es] that [she] ha[s] standing to sue," *ibid.—i.e.*, that she has suffered, or will suffer, an injury that is "concrete, particularized, and actual or imminent[.]" *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Because Attorney General Bondi's statements are not harmful in and of themselves, to deduce whether Aaron has sufficiently alleged injury in fact, this Court must look to the single injury Plaintiffs claim as a result of her public comments, namely: the "ongoing chilling of [Aaron's] protected speech." *Id*. ¶ 141.

The Supreme Court has made clear, and the D.C. Circuit has reiterated, that subjective allegations of chilled speech alone do not confer standing. Instead, to meet Article III's injury in fact requirement, a plaintiff's claimed fear of exercising his First Amendment rights must be accompanied by evidence of present or imminent concrete, objective harm. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' [upon the exercise of First Amendment rights] are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). In *Laird*, where the plaintiffs alleged that the mere existence of an Army intelligence data-gathering system chilled the exercise of their First Amendment rights, the Supreme Court found the plaintiffs' alleged chill was not based on "actual present or immediately threatened injury resulting from unlawful government action." *Id*. at 15. In other words, plaintiffs' alleged chill based on a speculative fear of injury at some undetermined time in the future rather than an "objective harm or threat of specific future harm" did not confer standing. *Id*. at 1. In contrast, in *Socialist Workers Party v. Attorney General*, the Supreme Court found sufficient injury to confer standing where, in addition to claiming FBI surveillance and investigative activity at a political convention would have a chilling effect on free speech and debate, the plaintiffs outlined objective, concrete harms that would likely result if the proposed government activity took place, including "dissuading some delegates from actively participating

in the convention and possible loss of employment for those identified as being in attendance[.]" 419 U.S. 1314, 1319 (1974). Later, in *Meese v. Keene*, a state senator alleged that the labeling of three films as political propaganda chilled his First Amendment rights and he presented objective evidence legitimizing his fear that displaying films categorized as propaganda would result in harm to his career. 481 U.S. 465, 472-77 (1987). The Supreme Court specifically noted that, merely alleging a subjective chilling effect without more would have been insufficient to satisfy Article III's injury-in-fact requirement. *Id*. at 473-74. Taken together, the Supreme Court's decisions show that, to constitute injury in fact necessary to establish standing, an allegation of chilling must be accompanied by sufficient allegations that engaging in a First Amendment protected activity will result in present or imminent objective harm that is not merely conjectural or hypothetical. *See Meese*, 481 U.S. at 472-74 (damage to reputation and prospects of reelection); *Socialist Workers*, 419 U.S. at 1316, 1318-19 (reduced attendance and participation in a political rally, and career-related repercussions); *Laird*, 408 U.S. at 13-14.

Here, Plaintiffs simply allege that public statements labeling ICEBlock as unlawful and unprotected speech because it endangers law enforcement have resulted in "the ongoing chilling of [Aaron's] protected speech." Compl. ¶ 141. They offer nothing more. Plaintiffs do not identify speech that Aaron is allegedly chilled from engaging in as a result of Defendant Bondi's (or any Defendant's) public statements. In fact, Plaintiffs explicitly allege that, following the officials' commentary, Aaron "did not yield. He did not take down or disable the App[,]" *id*. ¶ 10, allegations running directly counter to his claimed fear of speaking. And, crucially, Aaron does not allege, alongside his allegation of subjective chill, that he has or will imminently experience a concrete, objective harm at the hands of Defendants. Instead, he asserts the possibility of a future retaliatory criminal prosecution based solely on Defendant Bondi's labeling of the ICEBlock app as criminal. But this hypothetical criminal prosecution remains entirely speculative where Plaintiffs do not allege that an investigation or prosecution pursuant to those statements was underway or imminent at the time they filed their Complaint—notably, two months after the challenged statements were made. Aaron simply has not alleged a present

17

objective harm, and he cannot manufacture standing by chilling himself in anticipation of some hypothetical future retaliatory action that is not certainly impending. *See Clapper*, 568 U.S. at 402.

Finally, where Aaron has not alleged ongoing or imminent harm beyond ongoing subjective chill, he has not demonstrated standing for the prospective relief he seeks. "[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *FDA*, 602 U.S. at 381. To claim standing based on "[a]n allegation of future injury," a plaintiff must show that "the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 409, 414 n.5). Here, Plaintiffs ask that the Court (1) "[d]eclare that Defendants' threats to criminally investigate and/or prosecute Aaron for his role in developing, distributing, and promoting the App violates Aaron's rights under the First Amendment," and (2) "[p]ermanently enjoin Defendants. . . .from threatening, investigating, or prosecuting Aaron" *Id.* ¶¶ 145, 147. But, as outlined above, alleging that the Government could potentially seek to investigate or prosecute Aaron at some point in the future, absent allegations of any concrete steps taken to do so, does not bring Plaintiffs' harm allegations outside of the realm of "strictly speculative." *Media Matters for Am. v. Paxton*, 138 F.4th 563, 581-82 (D.C. Cir. 2025).  Because Plaintiffs' request for prospective relief is, at most, tied to subjective chill and speculative future injury, they have not established standing for the prospective relief they seek.[3]

Where Plaintiffs lack standing to bring a First Amendment retaliation claim against any Defendant, the Court must dismiss their Second Claim for Relief.

---

[3] Because this Court lacks jurisdiction to issue injunctive relief, it also lacks jurisdiction to issue declaratory relief, which "would amount to an advisory opinion without the possibility of any judicial relief." *California*, 593 U.S. at 673 (citation omitted).

### C.  The 10 Doe Defendants Must be Dismissed Where Plaintiffs Do Not Allege Specific Instances of Challenged Conduct by the Federal Officials.

Plaintiffs include as defendants 10 "federal officers or employees whose identities and specific official titles are presently unknown to Plaintiffs[,]" each allegedly "responsible, in whole or in part, for implementing, enforcing, supervising, or otherwise carrying out the federal policies or actions" being challenged. Compl. ¶ 27. Despite asserting that each "Doe Defendant" "acted under color of federal authority and within the scope of official duties" and "is sued for prospective declaratory and injunctive relief[,]" *id.*, Plaintiffs do not once make specific factual assertions as to any of these officials. The Complaint provides no allegations that the Doe Defendants participated in the alleged coercive or retaliatory conduct—no allegations of communication with or threats aimed at Apple, and no allegations of criticism of the ICEBlock App or retaliation against Aaron. Indeed, other than one mention of these Defendants in the "parties" section of the complaint, *id.* ¶ 27, the complaint never mentions the Doe Defendants. *See, e.g., id.* ¶¶ 120-32; *id.* ¶¶ 133-43. Because the Complaint is entirely devoid of any mention of specific actions by the Doe Defendants, much less any theory of how such (non-) action caused concrete injury to any plaintiff that could be redressed by this Court through the remedies sought in Plaintiffs' Prayer for Relief, Plaintiffs have not established standing against the federal officials. Accordingly, the 10 Doe Defendants must be dismissed from this suit. *Landwehr v. FDIC*, 2010 WL 2572077, at *3 (D.D.C. June 28, 2010) (dismissing plaintiffs' claims against various unnamed defendants due to "the complete absence of any specific allegations against [the] unnamed defendants"); *Jones v. Kane*, 2020 WL 977970, at *5 (D.D.C. Feb. 28, 2020) (dismissing plaintiffs' complaint against defendant "on the grounds that [the] complaint contain[ed] no allegations concerning her whatsoever"); *see also Segelstrom v Citibank, N.A.*, 76 F. Supp. 3d 1, 20 (D.D.C 2014) ("Even if Plaintiffs cannot know the names of the Doe Defendants without discovery, they should at least be able to indicate in their Complaint what roles these defendants played").

II.    **Plaintiffs Have Not Stated a First Amendment Coercion Claim.**

Should the Court find Plaintiffs sufficiently alleged standing to assert a First Amendment coercion claim—which it should not—the Court should alternatively dismiss Plaintiffs' "First Claim for Relief," Compl. ¶¶ 120-32, because Plaintiffs fail to state a viable First Amendment coercion claim under *Vullo*. Plaintiffs allege that "Defendant Bondi's demand to Apple to remove ICEBlock from the App store, as well as her viewpoint-based criticism of CNN for publicizing the app constitute a 'scheme of state censorship'" and "Defendant Bondi has the power to coerce Apple and CNN by investigating, regulating, prosecuting, and otherwise interfering with their business functions." *Id*. ¶ 124. Plaintiffs further allege that "Defendants Noem, Lyons, and Homan threatened Aaron and CNN, falsely claiming that each was acting illegally[,]" which could be "reasonably understood [as] a threat of adverse government action against any entity making the App available[,]" thus "constitut[ing] excessive pressure on Apple to remove the App[.]" *Id*. ¶ 125. The thrust of Plaintiffs' claim appears to be that Defendant Bondi's conversation with Apple and Defendants' collective public statements regarding ICEBlock and CNN's coverage of the App constituted impermissible government coercion of a private entity resulting in the suppression of Plaintiff Aaron's speech, in violation of the First Amendment. *Id*. ¶ 124-30. But Plaintiffs fail to state a First Amendment coercion claim where they do not allege actions by Defendants that could be "reasonably understood to convey a threat of adverse government action," *Vullo*, 602 U.S. at 177, *against Apple* if Apple chose not to remove the ICEBlock App from the App Store at the Government's request.

In *Vullo*, the Supreme Court explained: "to state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." 602 U.S. at 177. The Supreme Court outlined that determining "whether a reasonable person would perceive a government official's communications as coercive" requires looking to: (1) the government official's authority, (2) the communications between the government official and the entity, and (3) the coerced party's

reaction. *Id.* at 191-93. Here, the Complaint alleges direct communication between Defendant Bondi and Apple, but contains only conclusory allegations as to the *content* of those communications; and focuses on Defendant statements critical of *Aaron* and *CNN*, rather than alleging any public statement directed at *Apple*—let alone threatening adverse government action if Apple chose not to remove ICEBlock from the App Store. In other words, Plaintiffs fail to allege communication between any Defendant and Apple that a reasonable person would understand as explicitly or impliedly threatening adverse government action against Apple.

The Court's analysis in *Vullo* makes clear that, for purposes of a First Amendment coercion claim, a court should look to the oral and written communications *between the government official and the third party* entity. *Id.* at 191-93. Here, Plaintiffs allege a single instance of direct communication with Apple—a discussion between Attorney General Bondi and Apple—Compl. ¶ 1, and nowhere allege that, during this discussion, statements were made analogous to Superintendent Vullo's oral and written statements that the Supreme Court found could be "reasonably understood" to threaten civil enforcement actions or criminal prosecution. *Vullo*, 602 U.S. at 193.

In *Vullo*, the Supreme Court found the NRA stated a plausible First Amendment coercion claim when the NRA alleged that DFS Superintendent Vullo: (1) suggested during a meeting with insurance executives that insurance entities could avoid liability for infractions if they aided DFS' campaign against the NRA; and (2) issued guidance letters reminding DFS-regulated entities of their obligation to consider their "reputational risks" of being associated with the NRA. *Id.* at 184. Here, the Complaint is devoid of any allegations detailing the content of the conversation between Attorney General Bondi and Apple—any allegation of an implied or express threat of adverse government action. Plaintiffs do not allege that the Attorney General asserted regulatory authority or implied Apple would face investigation or enforcement actions should Apple choose not to comply with the government's request to remove the ICEBlock App. *See id.* at 194.

In another misguided attempt to draw support from the Supreme Court's analysis in

*Vullo*, Plaintiffs assert that public statements made by Defendants admonishing the ICEBlock App and CNN's coverage of the App were "reasonably understood to convey a threat of adverse government action against any entity making the App available." Compl. ¶ 125. But Plaintiffs' attempt to analogize entirely miss the mark where Plaintiffs allege that Defendant officials made statements that were not directed at Apple, and the statements were devoid of any reference to Apple or suggestion that legal sanctions or other adverse government action should be taken against any application platform. The alleged statements by Defendants suggesting ICEBlock poses a threat to law enforcement and suggesting the App may be unlawful are a far cry from Superintendent Vullo's communications to insurance entities over which she had direct regulatory and enforcement authority—communications that implied DFS would pursue enforcement actions against insurance entities that refused to cut ties with the NRA. *See Vullo*, 602 U.S. at 177.

The complaint, assessed as a whole, does not plausibly allege that Defendants "threatened to wield [their] power against" Apple if Apple refused to pull the ICEBlock App from the App Store. *Id.* at 194. Simply put, Plaintiffs do not once allege an action the government threatened—explicitly or impliedly—to take against Apple should Apple opt to keep ICEBlock in the App Store. Therefore, Plaintiffs' First Claim for Relief must be dismissed for failure to state a claim.

## III.    Plaintiffs Have Not Stated a First Amendment Retaliation Claim.

Plaintiffs claim that "Defendants violated Aaron's First Amendment rights by threatening Aaron. . . .with criminal prosecution based on his lawful development, distribution, and promotion of the App." Compl. ¶ 137. They allege that "Defendants' threats constitute retaliation" and "were intended to deter Aaron from engaging in further protected speech and to chill a person of ordinary firmness from continuing to speak or express similar viewpoints." *Id.* ¶¶ 139-40. But Plaintiffs fail to state a viable First Amendment retaliation claim where they do not allege concrete adverse action—and the adverse effects of that action on Plaintiffs—undertaken by any Defendant in response to Aaron's speech, instead mischaracterizing the statements about the ICEBlock App and its promotion as retaliatory.

"A plaintiff pursuing a First Amendment retaliation claim must show, among other things, that the government took an 'adverse action' in response to his speech that 'would not have been taken absent the retaliatory motive.'" *Houston Cmty. College Sys. v. Wilson*, 595 U.S. 468, 477 (2022) (quoting *Nieves v. Barlette*, 587 U.S. 391, 399 (2019)). Some "adverse actions" recognized by the Supreme Court as retaliatory include arrest, *Nieves*, 587 U.S. at 396; prosecution, *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006); and termination of an employee, *Perry v. Sindermann*, 408 U.S. 593, 596–97 (1972).

In this circuit, a plaintiff asserting First Amendment retaliation must show: "(1) he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory [or "adverse"] action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016).

The D.C. Circuit's recent decision in *Media Matters* is particularly enlightening here. *See* 138 F.4th at 569. In that First Amendment retaliation suit, the Court of Appeals applied the "objective ordinary firmness test" adopted by the Eleventh Circuit, requiring plaintiffs bringing a First Amendment retaliation claim "'to allege that the retaliatory acts of the defendants *adversely affected them*.'" *Id.* at 581 (emphasis added) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005)).[4] The court held that an investigative reporter and a non-profit watchdog media company satisfied both, the Article III injury in fact requirement, and the "ordinary firmness" prong of the D.C. Circuit's First Amendment retaliation inquiry when they established that the media company was the target of an active government investigation (as confirmed by the defendant state attorney general in a press release and interviews) and a sweeping civil investigation demand in response to their published article, resulting in "special burdens on their newsgathering activities and operation of their media company." *Id.* The court contrasted

---

[4] In *Bennet*, the Eleventh Circuit explained that satisfying the objective ordinary firmness test by alleging adverse effects from the retaliatory acts of a defendant also satisfies the Article III injury in fact requirement. 423 F.3d at 1247.

plaintiffs' ability to establish that a "retaliatory investigation [had] already begun[,]" *id*. at 582, and their provision of support for "their claims of adverse effects [from the investigation] to their news operations and journalistic mission[,]" *id*. at 573, with instances where future enforcement actions by the government (and their adverse effects on plaintiffs) were "strictly speculative." *Id*. at 581-82.

Earlier this year, this court applied the objective ordinary firmness test adopted in *Media Matters*, finding the termination of grant awards was an "adverse action" with adverse effects including plaintiffs having to "shutter projects, lay off staff, and break commitments to partner organizations and sub-awardees." *Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*, 2026 WL 80796, at *15-16 (D.D.C. Jan. 11, 2026) ("The objective 'ordinary firmness' test requires plaintiffs to allege that the retaliatory acts of the defendants adversely affected them." (citing *Media Matters*, 138 F.4th at 581)).

Here, Plaintiffs' labeling of Defendants' critical speech as retaliation is insufficient for several reasons. Most obviously, Plaintiffs have not alleged any concrete "adverse action" engaged in by Defendants. Plaintiffs label Defendants' statements criticizing ICEBlock and CNN's coverage of the App as retaliatory, *see, e.g.*, Compl. ¶ 97 ("The retaliation from Defendants was also immediate . . . Defendants falsely claimed that Plaintiffs were engaged in criminal conduct"); *id*. ¶ 140 ("Defendants' threats constitute retaliation"), but do not allege a single concrete action undertaken by Defendants pursuant to their statements. Plaintiffs do not allege the commencement of a criminal investigation in response to Aaron's speech. Nor do they allege that criminal charges have been, or imminently will be, brought against Aaron. Indeed, the relief Plaintiffs seek, namely: an injunction "prohibiting Defendants . . . from threatening or initiating criminal prosecution," *id*. ¶ 143, makes this clear. And, even if Aaron had alleged the commencement of a criminal investigation in response to his speech, this allegation alone would not satisfy the D.C. Circuit's objective ordinary firmness test without further allegations of adverse effects of the investigation on Aaron's continued speech or business operations. *See Media Matters*, 138 F.4th at 581.

Even if Aaron had engaged in speech protected by the First Amendment when he developed and promoted ICEBlock, the Government speaking critically of a citizen's legal conduct is not constitutionally impermissible adverse action. Indeed, "[i]f the First Amendment were thought to be violated any time a private citizen's speech or writings were criticized by a government official, those officials might be virtually immobilized." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1016 (D.C. Cir. 1991); *see also Block v. Meese,* 793 F.2d 1303, 1313 (D.C. Cir. 1986) ("[W]e know of no case in which the first amendment has been held to be implicated by governmental action consisting of no more than governmental criticism of the speech's content."

Finally, while Plaintiffs do not allege Aaron's criminal prosecution is underway, even if this hypothetical prosecution were to commence, it would be premature to label the government action as retaliatory because a finding of probable cause can negate an allegation of retaliation. *Hartman*, 547 U.S. at 265–66 (holding that, because of the presumption of prosecutorial regularity, an individual alleging retaliatory prosecution must also prove that their prosecution was not supported by probable cause). And an order prohibiting any future criminal prosecution wholesale, as plaintiffs appear to seek, would be inconsistent with that caselaw and the Executive Branch's "exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974).

In sum, the complaint, assessed as a whole, does not plausibly allege that Defendants "took an 'adverse action' in response to [Aaron's] speech," *Houston Community College System*, 595 U.S. at 477, or "allege that the retaliatory acts of the defendants adversely affected [Aaron,]" *Media Matters*, 138 F.4th at 581. Therefore, Plaintiffs' Second Claim for Relief must be dismissed for failure to state a claim.

## CONCLUSION

For all the reasons discussed herein, the Court should dismiss Plaintiffs' Complaint.

Dated: March 3, 2026                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General
                                        Civil Division

                                        ERIC J. HAMILTON
                                        Deputy Assistant Attorney General
                                        Civil Division, Federal Programs Branch

                                        JOSEPH BORSON
                                        Assistant Branch Director
                                        Federal Programs Branch

                                        /s/ *Alexandra L. Yeatts*
                                        ALEXANDRA L. YEATTS (CA Bar No. 358762)
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, N.W.
                                        Washington, DC 20005
                                        Telephone: (202) 353-5677
                                        Email: Alexandra.Yeatts@usdoj.gov

                                        *Attorneys for Defendants*