**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSHUA AARON,
ALL U CHART, INC.,

        *Plaintiffs*,

    v.

PAMELA J. BONDI, *et al*.,

        *Defendants*.

No. 1:25-cv-04250-DFL

<u>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    I.    Plaintiffs' Operative Complaint ..................................................................... 2

    II.    Legal Context .................................................................................................. 4

        A.  The Supreme Court's Decision in *Murthy v. Missouri* ........................... 4

        B.  The Supreme Court's Decision in *NRA v. Vullo* ..................................... 5

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT ................................................................................................................... 7

    I.    Plaintiffs Have Not Established Article III Standing. .................................... 7

        A.  Plaintiffs Lack Standing to Assert a First Amendment Coercion Claim. ............... 8

            i.   Plaintiffs' Lack Standing to Bring a First Amendment Coercion Claim Under *Murthy*. ................................................................................ 9

            ii.  Plaintiffs Fail to Allege an Ongoing Pressure Campaign as is Necessary to Establish Standing for Prospective Injunctive Relief. ............................. 13

        B.  Plaintiffs Lack Standing to Assert a First Amendment Retaliation Claim Against Any Defendant. ................................................................................ 15

    II.   Plaintiffs Have Not Stated a First Amendment Coercion Claim. ............................. 20

    III.  Plaintiffs Have Not Stated a First Amendment Retaliation Claim. ........................... 24

CONCLUSION ................................................................................................................ 27

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*,
No. 25-cv-4505, 2026 WL 80796 (D.D.C. Jan. 11, 2026)........................................................ 25

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016) ................................................................................................. 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................... *passim*

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963).............................................................................................................. 5, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................... 6, 10, 11

*Bennett v. Hendrix*,
423 F.3d 1247 (11th Cir. 2005) ..................................................................................... 25 & n.6

*Block v. Meese*,
793 F.2d 1303 (D.C. Cir. 1986)............................................................................................... 26

*Brownback v. King*,
592 U.S. 209 (2021)..................................................................................................................... 6

*California v. Texas*,
593 U.S. 659 (2021)................................................................................................. 15 n.2, 20 n.4

*Changizi v. Dep't of Health & Hum. Servs.*,
82 F.4th 492 (6th Cir. 2023), *cert. denied,* 144 S. Ct. 2716 (2024)........................................ 11

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)........................................................................................................................ 7

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................................................................................................... 18, 19, 20

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)..................................................................................................................... 6

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024).................................................................................................. 7, 20

*Hart v. Facebook, Inc.*,
   No. 23-cv-15858, 2024 WL 1693355 (9th Cir. Apr. 19, 2024).......................................... 11-12

*Hartman v. Moore*,
   547 U.S. 250 (2006).................................................................................................. 24, 27

*Houston Cmty. College Sys. v. Wilson*,
   595 U.S. 468 (2022).................................................................................................. 24, 27

*Kowal v. MCI Commc'ns Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994)....................................................................................... 10

*Laird v. Tatum*,
   408 U.S. 1 (1972)...................................................................................................... 18, 19

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).................................................................................................... 7

*Media Matters for Am. v. Paxton*,
   138 F.4th 563 (D.C. Cir. 2025)........................................................................ 20, 25, 26, 27

*Meese v. Keene*,
   481 U.S. 465 (1987).................................................................................................. 18, 19

*Murthy v. Missouri*,
   603 U.S. 43 (2024)............................................................................................... *passim*

*Nieves v. Barlette*,
   587 U.S. 391 (2019).................................................................................................... 24

*NRA v. Vullo*,
   602 U.S. 175 (2024).............................................................................................. *passim*

*O'Shea v. Littleton*,
   414 U.S. 488 (1974).................................................................................................... 13

*Penthouse Int'l, Ltd. v. Meese*,
   939 F.2d 1011 (D.C. Cir. 1991)..................................................................................... 26

*Perry v. Sindermann*,
   408 U.S. 593 (1972).................................................................................................... 24

iii

*Simon v. Eastern Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) .................................................................................................. 11

*Socialist Workers Party v. Attorney General*,
  419 U.S. 1314 (1974) ......................................................................................... 18, 19

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................... 6

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................................... 20

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................................ 7, 17

*United States v. Nixon*,
  418 U.S. 683 (1974) ............................................................................................... 27

*United States v. Texas*,
  599 U.S. 670 (2023) ................................................................................................. 7

**FEDERAL RULES**

Fed. R. Civ. P. 12 ...................................................................................................... 6

Fed. R. Civ. P. 25(d) ........................................................................................... 1 n.1

**INTRODUCTION**

Plaintiffs—Joshua Aaron (Aaron), a software developer who created an iPhone application permitting the public tracking of ICE agents, called ICEBlock, and ALL U Chart, Inc., Aaron's corporation that owns the application's intellectual property—claim that Attorney General Bondi and 10 unnamed federal officials (Doe Officials) unconstitutionally pressured Apple to remove ICEBlock from the App Store. They also claim public comments by Attorney General Bondi, DHS Secretary Noem[1], ICE Acting Director Lyons, and Border Czar Homan constitute unconstitutional retaliation. Plaintiffs allege both First Amendment coercion and First Amendment retaliation claims. Both claims fail.

At the outset, Plaintiffs lack standing to bring their First Amendment coercion claim under the Supreme Court's decision in *Murthy v. Missouri*. Plaintiffs fail to untangle Attorney General Bondi and the Doe Officials' purported communications with Apple from Apple's "independent incentives to moderate content," *Murthy v. Missouri*, 603 U.S. 43, 60 (2024)— especially relevant here, where Plaintiffs concede that Apple determined ICEBlock violated its own App Store Guidelines. Additionally, Plaintiffs fail to sufficiently allege the "ongoing pressure campaign" necessary to establish standing for prospective injunctive relief in the First Amendment coercion context. *Id.* at 69.

Plaintiffs' First Amendment retaliation claim must also be dismissed on standing grounds because Plaintiffs do not allege that each Defendant characterized Aaron's speech as criminal and called for his investigation and prosecution, and thus fail to allege "specific causation." *Id.* at 61. Rather, the operative complaint attempts to mix-and-match such allegations in a manner the Supreme Court has recently rejected. Plaintiffs also fail to satisfy Article III's injury in fact requirement for this claim, as they allege only subjective chill purportedly caused by speculation about future enforcement actions as a result of Defendants' alleged "retaliatory" statements.

---

[1] The Complaint names as a Defendant Kristi Noem in her official capacity as then-Secretary of Homeland Security. Under Federal Rule of Civil Procedure 25(d), Markwayne Mullin, the current Secretary of Homeland Security, is automatically substituted as a Defendant.

Speculation is insufficient to constitute Article III standing. Relatedly, where Plaintiffs fail to allege a sufficient likelihood of imminent, concrete injury, they have not established standing for the prospective relief they seek.

Even if this Court finds Plaintiffs have sufficiently alleged standing to bring either of their First Amendment claims—and they have not—Plaintiffs' claims fail on the merits. Under *NRA v. Vullo*, Plaintiffs fail to state a viable First Amendment coercion claim because they do not allege nonconclusory facts establishing communications by Defendants that could be "reasonably understood to convey a threat of adverse government action" against Apple if Apple chose not to remove ICEBlock from the App Store. 602 U.S. 175, 177 (2024). Plaintiffs' coercion claim also misses the mark. Plaintiffs allege communication between Attorney General Bondi and the Doe Officials, and Apple, but their Complaint contains nothing more than speculation and conclusory allegations about the *content* of those communications. Thus, Plaintiffs do not allege facts that would establish the threatening governmental action that the Supreme Court found to be necessary (and dispositive) in *Vullo*. As such, Plaintiffs' coercion claim fails.

Plaintiffs similarly fail to state a viable First Amendment retaliation claim. They do not allege that any Defendant has engaged in concrete "adverse action" in response to Plaintiff Aaron's speech. Instead, all they point to is Defendants' speech criticizing the ICEBlock app and its promotion. But government criticism of a citizen's speech is not constitutionally impermissible, much less unconstitutional retaliation. Thus, Plaintiffs' retaliation claim fails.

## BACKGROUND

### I.    Plaintiffs' Operative Complaint

On December 8, 2025, Plaintiffs brought this suit against Defendants Pamela Bondi, in her official capacity as Attorney General of the United States; Kristi Noem, in her official capacity as Secretary of the United States Department of Homeland Security (DHS); Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement

(ICE); Thomas Homan, in his official capacity as White House Border Czar; and ten John Doe Federal Officials, each acting in their official capacities. ECF No. 1 (Compl.). On March 3, 2026, Defendants filed a Motion to Dismiss Plaintiffs' Complaint, ECF No. 18. On March 16, 2026, Plaintiffs filed an Amended Complaint, ECF No. 22 (Amend. Compl.).

Aaron is a software developer and the founder and creator of the ICEBlock application ("ICEBlock" or the "App"), Amend. Compl. ¶ 23, an iPhone application that "allows members of the public to report publicly observable locations of [ICE] agents," *id*. ¶ 3. ICEBlock became available for free download in Apple's App Store in April 2025. *Id*. ¶ 8. ALL U Chart is a corporation that owns all intellectual property associated with the ICEBlock application. *Id*. ¶ 24. Plaintiffs allege that, primarily between June 30, 2025 and October 8, 2025, Attorney General Bondi and the Doe Officials made "unconstitutional threats and demands against Apple, which pressured it to remove the ICEBlock App from the App Store," resulting in censorship of Aaron and ALL U Chart's speech. *Id.* ¶ 18. Plaintiffs further allege that Attorney General Bondi, DHS Secretary Noem, ICE Acting Director Lyons, and Border Czar Homan "threaten[ed] to criminally investigate and prosecute [Aaron] for his role in developing ICEBlock," in order to chill Aaron's freedom of expression and to deter the amplification of his free speech. *Id.* ¶ 19. Plaintiffs allege that these actions violate the First Amendment. *See id.* ¶¶ 145-46, 156, 159. Plaintiffs bring two counts: a First Amendment coercion claim ("First Claim for Relief"), *id*. ¶¶ 137-51, and a First Amendment retaliation claim ("Second Claim for Relief"), *id.* ¶¶ 152-63.

Plaintiffs ask this Court to "[d]eclare that the actions of Defendants Bondi and [the] Does to coerce, threaten, or demand that Apple stop distributing ICEBlock via the App Store violate Plaintiffs' rights under the First Amendment[.]"." *Id.* ¶ 164. Plaintiff Aaron "further seeks a declaration that "Defendants Bondi, Noem, Homan, and Lyons's threats to criminally investigate and/or prosecute Aaron for his role in developing, distributing, and promoting ICEBlock violates Aaron's rights under the First Amendment[.]" *Id.* ¶ 165. Plaintiffs seek an injunction prohibiting Defendants "from coercing, threatening, investigating, or demanding Apple or other app distribution services in order to stop distribution of ICEBlock[,]" *id.* ¶ 166, and an injunction

prohibiting Defendants "from threatening, investigating, or prosecuting Aaron[,]" *id.* ¶ 167.

## II.    Legal Context

This case is largely controlled by two recent Supreme Court decisions: (1) *Murthy*, which sets the standards for Article III standing for allegations that the Government is coercing third-party platforms to censor free speech; and (2) *Vullo*, which governs the substantive requirements for a viable First Amendment coercion claim.

### A.  The Supreme Court's Decision in *Murthy v. Missouri*

In June 2024, the Supreme Court decided in *Murthy*, in which the Court concluded that Plaintiffs lacked standing to claim the Government coerced social media platforms to censor plaintiffs' posts regarding COVID-19 and the 2020 election. *See* 603 U.S. 43. The Court reasoned that to establish standing in this context "the plaintiffs must show a substantial risk that, in the near future, at least one platform will restrict the speech of at least one plaintiff in response to the actions of at least one Government defendant." *Id.* at 58. "And even where the plaintiff, platform, time, content, and defendant line up, the links must be evaluated in light of the platform's independent incentives to moderate content." *Id.* at 61.

The Court determined that the plaintiffs failed to make that requisite showing. *First*, the Court concluded that the plaintiffs had not established "specific causation" because they had failed to show "that a particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic." *Id.* at 59-61. Assessing the asserted "direct censorship injuries" on a plaintiff-by-plaintiff, defendant-by-defendant, and platform-by-platform basis, the Court concluded that no plaintiff had standing to claim that past injuries were traceable to the Government's conduct. *Id.* at 58-68.

*Second*, the Supreme Court emphasized that plaintiffs failed to show "a real and immediate threat of repeated injury," as required to obtain prospective relief. *Id.* at 58 (citation omitted). Thus, "without proof of an ongoing pressure campaign," the Supreme Court determined it was "entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants." *Id.* at 69.

4

B.  **The Supreme Court's Decision in *NRA v. Vullo***

In May 2024, the Supreme Court handed down its judgement in *Vullo*, in which the court held that the National Rifle Association of America (NRA) plausibly alleged that Vullo, the superintendent of the New York Department of Financial Services (DFS), violated the First Amendment by coercing DFS-regulated entities to terminate their business relationships with the NRA in order to punish or suppress its gun-promotion advocacy. *See* 602 U.S. 175.

The Court outlined that "to state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *Id*. at 177 (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67-68 (1963)). In other words, "[w]hen government officials are engaging in their own expressive conduct," "the Free Speech Clause has no application[,]" but "a government official cannot directly or indirectly coerce a private party to punish or suppress disfavored speech on her behalf." *Id*. at 176-77 (citation omitted).

The Supreme Court explained that the objective inquiry of "whether a reasonable person would perceive a government official's communications as coercive"—thus crossing the line from permissible expression and persuasion to impermissible coercion in violation of the First Amendment—requires looking to: (1) the government official's authority, (2) the communications between the government official and the entity, and (3) the coerced party's reaction. *See id*. at 191-93.

*First*, the Court outlined that, while "the power that a government official wields" "is not dispositive," "the greater and more direct the government official's authority, the less likely a person will feel free to disregard a directive from the official." *Id*. at 191-92. As DFS superintendent, "Vullo had direct regulatory and enforcement authority over all insurance companies and financial service institutions doing business in New York[,]" *id*. at 192, and "the power to initiate investigations and civil enforcement actions" and "to refer matters for criminal prosecution[,]" *id*. at 175.

*Second*, the Court found Vullo's alleged communications with DFS-regulated entities could "be reasonably understood as a threat or as an inducement" constituting coercion, although Vullo did not explicitly threaten prosecution for failure to aid in "DFS's campaign against gun groups." *Id*. at 193. Plaintiffs emphasized numerous, specific alleged communications in their complaint. *See id*. at 176, 192-93. These communications included a private meeting with insurance executives during which Vullo pointed to a variety of infractions that DFS would be "be less interested in pursuing" if the regulated insurance entities "ceased providing insurance to gun groups, especially the NRA." *Id*. at 192 (cleaned up). Vullo also told the executives she would "'focus' her enforcement actions 'solely' on the syndicates with ties to the NRA." *Id*. Vullo also issued guidance letters in which she encouraged DFS-regulated entities to consider their "reputational risks," "including those that may arise from their dealings with the NRA," and encouraged the entities to "take prompt actions to manag[e] these risks" by discontinuing their arrangements with the NRA. *Id*. at 176.

*Third*, the Court considered the regulated entities' reaction to Vullo's actions, which was to quickly terminate all insurance related to the NRA. *Id*. at 193.

## LEGAL STANDARD

Defendants move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), Plaintiffs bear the burden to establish subject matter jurisdiction, which must "be established as a threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 104 (1998). The Court "presume[s]" to "lack jurisdiction" unless the plaintiff meets their "burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quotations omitted)); *see Brownback v. King*, 592 U.S. 209, 217 (2021) (plaintiff "must plausibly allege all jurisdictional elements"). If that burden is not met, the Court "must dismiss the action" or the affected claim. Fed. R. Civ. P. 12(h)(3).

To withstand a motion to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a court must disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" and determine whether the remaining "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 679.

**ARGUMENT**

## I.    Plaintiffs Have Not Established Article III Standing.

Standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023). Under Article III, "the irreducible constitutional minimum" requires that (1) the plaintiff has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there must exist "a causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). "[S]tanding is not dispensed in gross," meaning "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

"[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). This is true even when a plaintiff has established past injury. A previously injured plaintiff must establish a "'real and immediate threat of repeated injury' demonstrated by more than 'past exposure to illegal conduct.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Those familiar Article III principles resolve this case in Defendants' favor.

*First*, Plaintiffs' First Amendment coercion claim, which is brought only against the Attorney General and Doe Officials, must be dismissed on standing grounds because Plaintiffs fail to allege traceability to Attorney General Bondi and the Doe Officials where they fail to sufficiently allege that Apple did not have "independent incentives to moderate content," *Murphy*, 603 U.S. at 60. Even if Plaintiffs have adequately tied Apple's content moderation

7

decision to Attorney General Bondi or the Doe Officials, Plaintiffs do not sufficiently allege an "ongoing pressure campaign," as is required to obtain prospective relief in the First Amendment coercion context. *Id*. at 69.

*Second*, Plaintiffs' First Amendment retaliation claim must also be dismissed on standing grounds where Plaintiffs fail to allege that *each* Defendant characterized the ICEBlock App as unlawful and called for Aaron's criminal prosecution; and where Plaintiffs fail to satisfy Article III's injury in fact requirement, alleging only subjective chill and speculative future enforcement actions as a result of Defendants' "retaliatory" statements. And, because Plaintiffs fail to allege a sufficient likelihood of imminent, concrete injury as a result of Defendants' statements, they have not established standing for the prospective relief they seek.

As such, the Court must dismiss each of Plaintiffs' claims for lack of subject-matter jurisdiction.

### A.  Plaintiffs Lack Standing to Assert a First Amendment Coercion Claim.

Plaintiffs' First Amendment coercion claim fails on standing grounds and must be dismissed. Plaintiffs claim that Attorney General Bondi and the Doe Officials coerced Apple, a private entity, to censor Aaron's protected speech, thus violating his First Amendment rights. *See* Amend. Compl. ¶¶ 137-51. First, Plaintiffs fail to sufficiently allege facts to establish that Apple did not remove ICEBlock from the App Store as a result of Apple's "independent incentives to moderate content," *Murthy*, 603 U.S. at 60, rather than as a result of actions by any Defendant. Indeed, Plaintiffs acknowledge that Apple removed ICEBlock because it said that it violated Apple's own terms of service. Amend. Compl. ¶¶ 121-25. And second, even if this Court finds Plaintiffs have sufficiently alleged standing against any Defendant based on past coercion harms—and they have not—it must nevertheless dismiss Plaintiffs' coercion claim because Plaintiffs fail to allege the "ongoing pressure campaign" the Supreme Court explained is necessary to establish standing for prospective relief in the First Amendment coercion context. *Murthy*, 603 U.S. at 69. Plaintiffs' own time-limited allegations demonstrate that any future harm to them was entirely speculative at the time they filed their Amended Complaint.

8

> **i.    Plaintiffs' Lack Standing to Bring a First Amendment Coercion Claim Under *Murthy*.**

Plaintiffs lack standing to bring a First Amendment coercion claim against any Defendant because they fail to plead facts to establish that Apple did not remove ICEBlock from the App Store as a result of Apple's "independent incentives to moderate content," *Murthy*, 603 U.S. at 60, in accordance with pre-existing App Store Guidelines. In other words, Plaintiffs fail to allege that the harms they claim to experience as a result of ICEBlock being removed from the App Store—namely, suppression of Aaron's speech, "loss of distribution channels, reputational harm, and diminished audience reach, and ongoing chilling, Amend. Compl. ¶¶ 145, 148—are not attributable to Apple's independent choice to remove the App.

Just the opposite is true: Plaintiffs allege that a public statement from Apple, as well as two communications Apple sent to Aaron, consistently explain that Apple removed ICEBlock from the App Store pursuant to the threat posed to law enforcement in violation of Apple's own pre-existing Guidelines. *Id*. ¶¶ 121-25. According to Plaintiffs, on October 2, 2025, Attorney General Bondi "stated on Fox News: 'We reached out to Apple today demanding they remove the ICEBlock app from their App Store—and Apple did so.'" *Id*. ¶ 115. Plaintiffs allege that, the same day, Apple issued a public statement outlining that the company removed the ICEBlock App from the App Store "[b]ased on information [Apple] received from law enforcement about the safety risks associated with ICEBlock." *Id*. ¶ 121. Plaintiffs then describe that a communication sent to Aaron by Apple on the same date explains that "[i]nformation provided to Apple by law enforcement shows that [the] app violates [App Store] Guideline 1.1.1 because its purpose is to provide location information about law enforcement officers that can be used to harm such officers individually or as a group." *Id*. ¶ 122. Plaintiffs assert that a second communication sent from Apple to Aaron on October 3, 2025, reiterated that "information provided to Apple by law enforcement shows that your ICEBlock App violates Guideline 1.1.1 because its purpose is to provide location information about law enforcement that can be used to harm such officers individually or as a group." *Id*. ¶ 125. Plaintiff does not assert non-conclusory

9

allegations sufficiently establishing that Apple did not—despite its clear explanation on multiple occasions—freely exercise its discretion to remove ICEBlock after receiving evidence of safety risks the App poses to law enforcement officers. Instead, Plaintiffs simply declare that "Apple's decision to remove ICEBlock from the App Store was not the product of Apple's independent judgment[,]" as Apple did not have an "independent incentive to remove ICEBlock." *Id*. ¶ 112. But this is just the type of conclusory assertions that fail under *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555)).

Plaintiffs then describe Apple's public explanation for removing ICEBlock as "pretextual and designed, perhaps at the government's insistence, to obscure the fact of the government's coercion." *Id*. ¶ 120. They assert that "[b]ut for the coercive nature of Attorney General Bondi and the Doe Defendants' demands, Apple would not have removed ICEBlock from the App Store." *Id*. ¶ 112. These bold and unsupported assertions require the Court to both ignore the existence of the directly relevant, pre-existing App Store Guideline, and question the veracity of Apple's statements without any reason to do so—based entirely on Plaintiffs' speculation about the content of alleged, yet unidentified and unknown, communications between the Government and Apple, *see id*. at 127 (acknowledging that Plaintiffs do not know the content of "the underlying communications with Apple about ICEBlock"). But "*plaintiffs* bear the burden to establish standing by setting forth 'specific facts'" and courts should not "draw[] links that [Plaintiffs] [themselves] ha[ve] not set forth." *Murthy*, 603 U.S. at 68 n.7 (citation omitted); *see also Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[A] court need not accept inferences drawn by the plaintiffs if such inferences are unsupported by the facts set out in the complaint."). Where Plaintiffs do not sufficiently allege facts that, taken as true, would establish that Apple's moderation decision was the result of government pressure rather than Apple's own business considerations—even those informed by governmental communications—Plaintiffs have failed to meet this burden.

Plaintiffs' assertion that the ICEBlock App was previously reviewed and approved by Apple, *id*. ¶¶ 81-91, does not eliminate the likelihood that, when presented with evidence of

serious safety risks posed to law enforcement, Apple chose to reevaluate the App's compliance with its App Store Guidelines. *Iqbal*, 556 U.S. at 682 (outlining that an "obvious alternative explanation" negates plausibility (citing *Twombly*, 550 U.S. at 567)). Indeed, Plaintiffs' allegations as to Apple's initial review of ICEBlock indicate Apple was hesitant to publish the App. *Id.* ¶ 86 (outlining that "Apple had initially rejected ICEBlock for publication").

A federal court cannot redress "injury that results from the independent action of some third party not before the court." *Simon* v. *Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). Plaintiffs here, therefore, face an insurmountable hurdle where they do not plausibly allege that any specific Defendant's statement or action caused Apple to remove the App, rather than the alternative explanation that Apple was provided with relevant law enforcement information and resultantly made an independent content moderation decision of its own accord based on longstanding App Store Guidelines. *See Murthy*, 603 U.S. at 64 (finding unlikely plaintiff's injuries were traceable to defendant government agency when Twitter removed plaintiff's post according to the platform's pre-existing policy against posting private, intimate media without subject's express consent).

As the Supreme Court has explained, a complaint must allege facts "plausibly suggesting" illegal conduct such that the allegations are no longer in "neutral territory." *Twombly*, 550 U.S. at 557. Ultimately, Plaintiffs' allegations are, at best, "neutral" as to whether Apple exercised its "independent judgment" based on its "independent incentives to moderate content," or was "coerced" into content moderation by the Government. *Murthy*, 603 U.S. at 60. Neutrality is not enough to state a claim. *Twombly*, 550 U.S. at 577.

Other courts have held, for similar reasons, that plaintiffs had failed to plead standing to pursue similar claims. *See Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492, 497 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2716 (2024) (holding, at the pleading stage, that the plaintiffs lacked standing because they "fail to adduce facts demonstrating that the decisions Twitter made when it enforced its own COVID-19 policy did not result from its 'broad and legitimate discretion' as an independent company"); *see also Hart v. Facebook, Inc.*, No. 23-cv-15858,

11

2024 WL 1693355, at *3 (9th Cir. Apr. 19, 2024) ("Because [the plaintiff] has not plausibly alleged that Twitter and Facebook acted at the behest of the Federal Defendants—as opposed to pursuant to their own policies—he has not shown that a favorable judicial decision against the Federal Defendants would provide him any relief.").

To the extent Plaintiffs are displeased with Apple's decision to remove ICEBlock, these criticisms must raised in a suit against Apple, should one be otherwise viable. For instance, Plaintiffs criticize that Apple's cited justification for removing ICEBlock—that the App "can be used to harm [] law enforcement officers"—is not a word for word recitation of the App Store Guideline referencing Apps that are "likely to humiliate, intimidate, or harm a targeted individual or group." Amend. Compl. ¶ 123. Plaintiffs are further unhappy that Apple has not previously reported removing applications to comply with requests from the U.S. Government, and that Apple and Google chose to remove applications that allow users to post information about immigration agents' operations but have not removed applications that allow users to post information about non-immigration law enforcement operations. *Id*. ¶¶ 119, 130. Finally, Plaintiffs allege that "Apple did not undertake investigation" after being provided with information by law enforcement. *Id*. ¶ 111. Where each of these allegations explicitly concerns a decision made by Apple, rather than action by any Defendant, they are irrelevant and are not properly before the court in a suit to which Apple is not a party. Indeed, the allegations only illustrate that Apple had independent processes and independent agency, pursuant to its independent interests and independent terms of services—and that it exercised that authority in a way that Plaintiffs disagree with does not mean that this suit can proceed.

Because Plaintiffs lack standing to bring a First Amendment coercion claim against Attorney General Bondi and the Doe Officials, the Court must dismiss their First Claim for Relief.

12

ii.    **Plaintiffs Fail to Allege an Ongoing Pressure Campaign as is Necessary to Establish Standing for Prospective Injunctive Relief.**

Even if Plaintiffs have sufficiently alleged past harm traceable to any particular Defendant, they nevertheless fail to allege likely future injury needed to justify the prospective injunctive relief they seek. Plaintiffs ask the Court to (1) "[d]eclare that the actions of Defendants Bondi and [the] Does to coerce, threaten, or demand that Apple stop distributing ICEBlock via the App Store violate Plaintiffs' rights under the First Amendment[,]" *Id*. ¶ 164, and (2) "[p]ermanently enjoin Defendants. . . .from coercing, threatening, or demanding Apple or other app distribution services in order to stop distribution of the ICEBlock[,]" *Id*. ¶166. But, as *Murthy* explains, to obtain forward-looking relief against government coercion on the basis of alleged past episodes of coercion, plaintiffs are required to show "a substantial risk of *future* injury that is *traceable to the Government defendants* and likely to be redressed by an injunction against them." 603 U.S. at 58 (emphasis added). Plaintiffs must face "a real and immediate threat of repeated injury." *O'Shea* v. *Littleton*, 414 U.S. 488, 496 (1974). In other words, Plaintiffs must do more than make allegations of past injury. *See id*. at 495–96 ("Past exposure to illegal conduct" can serve as evidence of threatened future injury but "does not in itself show a present case or controversy regarding injunctive relief.")

In the First Amendment coercion context specifically, Plaintiffs must allege "an ongoing pressure campaign" by the Government without which it is "entirely speculative that the platforms' future moderation decisions [would] be attributable, even in part, to the defendants," and there would be no basis for injunctive relief. *Murthy*, 603 U.S. at 69. Here, Plaintiffs must sufficiently allege that Defendants were, at the time the Amended Complaint was filed, actively pressuring Apple to *keep* ICEBlock out of the App Store. In other words, Plaintiffs must sufficiently allege that, if not for continued pressure from Defendants, Apple would restore ICEBlock to the App Store. Plaintiffs' allegations fall short of meeting this threshold where Plaintiffs do not allege specific facts to "show a substantial risk that, in the near future, [Apple]

13

will restrict [their] speech . . . in response to the actions of at least one Government defendant." *Id*. at 58.

Rather than alleging a single instance, since October 2025, of action by Attorney General Bondi or the Doe Officials intended to pressure Apple to restrict (or continue to restrict) Aaron's speech, Plaintiffs make a passing reference to an ongoing "campaign of coercion against those who publish location and similar information about ICE activities," Amend. Compl. ¶ 147, and assert, without support, that "[i]f the government removed its unlawful coercion, Apple would be significantly more likely to restore ICEBlock in the App Store," *id*. ¶ 113. These vague and conclusory assertions are unsupported by any specific factual allegations of government pressure on Apple over the last five months and, thus, do not survive the *Iqbal* plausibility standard. *See Iqbal*, 556 U.S. at 679.

Indeed, Plaintiffs allegations focus entirely on public statements made by Attorney General Bondi between June 30 and October 8, 2025, and alleged communication between Attorney General Bondi, the Doe Officials, and Apple on October 2, 2025. *See, e.g.*, Amend. Compl. ¶¶ 101-103 (alleging that, on June 30, 2025, Attorney General Bondi publicly spoke about ICEBlock and CNN's coverage of the App); *id*. ¶ 110 (alleging Defendant Bondi directly, or through the Doe Defendants, demanded on October 2, 2025 that Apple remove ICEBlock from the App Store under the threat of government sanction or inducement); *id*. ¶ 115 (alleging Defendant Bondi announced publicly that she spoke with Apple on October 2, 2025); *id*. ¶ 116 (alleging Defendant Bondi testified before the Senate Judiciary Committee that she spoke with Apple and Google about removing the ICEBlock App on October 7, 2025); *id*. ¶ 118 (alleging Defendant Bondi stated during a public speech on October 8, 2025 that she spoke with Apple and Google about taking down the ICEBlock App). Plaintiffs' own allegations thus fail to plausibly assert that, by the time they filed their initial Complaint in December 2025 and Amended Complaint in March 2026, "they [were] likely to face a risk of future censorship traceable to the [Defendants]." *Murthy*, 603 U.S. at 73 (Plaintiffs face a fatal "redressability problem . . . [because] without evidence of *continued* pressure from the defendants, . . . the

14

platforms remain free to enforce, or not to enforce, those policies—even those tainted by initial governmental coercion." (emphasis added)). Due to Plaintiffs' own temporally limited allegations, their claim for prospective relief falters.[2]

Because Plaintiffs fail to sufficiently allege an ongoing pressure campaign by Attorney General Bondi and the Doe Officials, the Court lacks jurisdiction to issue prospective injunctive relief.

### B. Plaintiffs Lack Standing to Assert a First Amendment Retaliation Claim Against Any Defendant.

Plaintiffs claim that Defendants Bondi, Noem, Lyons, and Homan "violated Aaron's First Amendment rights by threatening Aaron . . . with criminal prosecution based on his lawful development, distribution, and promotion of ICEBlock." Amend. Compl. ¶ 156. Plaintiffs' First Amendment retaliation claim, brought on behalf of Plaintiff Aaron,[3] fails on standing grounds and must be dismissed. First, Plaintiffs fail to sufficiently allege "specific causation," *Murthy*, 603 U.S. at 59, where they do not allege that each named Defendant characterized the ICEBlock App as unlawful and called for Aaron's criminal investigation and prosecution. Additionally, the Supreme Court and D.C. Circuit have made clear that the sole injury Plaintiffs allege as a result of Defendants' "retaliatory threats"—subjective chilling—is an inadequate substitute for a claim of present or imminent concrete harm necessary to establish injury in fact. And, because

---

[2] Because this Court lacks jurisdiction to issue injunctive relief, it also lacks jurisdiction to issue declaratory relief, which "would amount to an advisory opinion without the possibility of any judicial relief." *California v. Texas*, 593 U.S. 659, 673 (2021) (citation omitted).

[3] Plaintiffs "Second Claim for Relief" is brought against Defendants Bondi, Noem, Lyons, and Homan for "Threatened Prosecution for Protected Speech" and asserts that the named "Defendants violated Aaron's First Amendment rights by threatening Aaron, an individual citizen, with criminal prosecution based on his lawful development, distribution, and promotion of ICEBlock." Amend. Compl. ¶ 156. Plaintiffs further assert that "Defendants' threats were intended to deter Aaron from engaging in further protected speech," *id*. ¶ 158, and "Aaron is suffering and will continue to suffer irreparable harm as a result of Defendants' unconstitutional actions," *id*. ¶ 161. Absent any assertion that Defendants threatened or caused harm to Plaintiff ALL U Chart, Inc., the Government understands Plaintiffs' First Amendment retaliation claim to be brought only on behalf of Plaintiff Aaron. To the extent it is intended to cover both plaintiffs, it should be dismissed against ALL U Chart, Inc. for lack of standing.

15

Plaintiffs fail to allege a sufficient likelihood of imminent, concrete injury—in the form of a bad-faith criminal investigation, retaliatory prosecution, or otherwise—they have not established standing for the prospective relief they seek.

Plaintiffs assert that Defendants retaliated against Aaron because, "[w]ithin hours of CNN's feature of ICEBlock, each of the named Defendants falsely claimed that Plaintiffs were engaged in criminal conduct and were inviting violence against law enforcement officers[,]" Amend. Compl. ¶ 97, and "Defendants . . . threaten[ed] Aaron . . . with criminal prosecution based on his lawful development, distribution, and promotion of ICEBlock." *Id*. ¶ 156. Yet Plaintiffs nowhere allege that Defendants Lyons, Homan, or Noem specifically characterized Aaron's speech as criminal or called for his investigation or prosecution. Instead, in an attempt to substantiate their retaliation claim, Plaintiffs allege statements by these officials that largely concern CNN—a non-party to the suit—and statements that note the general proposition that assaulting law enforcement or interfering with law enforcement operations is a crime. Plaintiffs allege that Defendant Lyons criticized *CNN's* promotion of the App and, when asked whether the creation or use of ICEBlock violates the law, responded saying "We've been very aggressive with the Department of Justice. They've been great partners with us as far as prosecuting anyone that has impeded or interfered with ICE arrest. So that's what we're focusing on now with the Department of Justice – to see exactly what we can do." Compl. ¶ 98. Plaintiffs then assert that Defendant Homan called "for DOJ to investigate whether *CNN* crossed the line into criminal activity in covering ICEBlock[,]" and assert that this statement somehow "falsely implied that Plaintiffs' protected speech was illegally endangering law enforcement officers." *Id*. ¶ 99 (emphasis added). And, Plaintiffs allege that, when asked "whether ICEBlock and CNN were engaged in criminal wrongdoing, Homan stated 'The federal government has prosecuted people for assaulting ICE agents. We prosecuted people for doxing agents. So, DOJ is on top of this. So, I think DOJ will come to the point where these people will be held accountable. . . .I know Pam Bondi is all over it.'" *Id*. ¶ 100. Finally, Plaintiffs allege that Defendant Noem posted on X that ICEBlock "sure looks like obstruction of justice. . . If you obstruct or assault our law

16

enforcement, we will hunt you down and you will be prosecuted to the fullest extent of the law." *Id.* ¶ 104. And Plaintiffs allege Noem stated that "DHS was 'working with the Department of Justice to see if we can prosecute [*CNN*] for [the ICEBlock story], because what [*CNN* is] doing is actively encouraging people to avoid law enforcement activities, operations, and we're going to actually go after them and prosecute them with the partnership of Pam [Bondi].'" *Id.* ¶ 105 (emphasis added). Without more, Plaintiffs do not sufficiently allege that Defendants Lyons, Homan, or Noem definitively characterized Aaron's speech as criminal or called for his investigation or prosecution. And, of course, generalized statements about the prosecution of unspecified individuals who committed criminal acts do not constitute unconstitutional retaliation against Aaron. Plaintiffs, therefore, fail to allege traceability as to these three officials. *See Murthy*, 603 U.S. at 61 ("'standing is not dispensed in gross'" and "'plaintiffs must demonstrate standing for each claim that they press' against each defendant" (citing *TransUnion LLC*, 594 U.S. at 431)).

As to Attorney General Bondi, Plaintiffs assert that she stated in a television interview that Aaron was "giving a message to criminals where our federal officers are. And he cannot do that. And we are looking at it, we are looking at him, and he better watch out because that's not protected speech. That is threatening the lives of our law enforcement officers throughout this country." *Id.* ¶ 101. Plaintiffs further allege that, on October 7, 2025, Attorney General Bondi stated in her testimony before the Senate Judiciary Committee that the ICEBlock App "was reckless and criminal in that people were posting where ICE officers lived." *Id.* ¶ 116. Even if Plaintiffs sufficiently allege that Attorney General Bondi believed the App to be unlawful and warranting of a closer look due to safety threats posed to law enforcement officers, Plaintiffs lack standing to bring a retaliation claim where they fail to allege concrete injury resulting from these statements (and, to be clear, Plaintiffs do not assert that Apple taking the App down constituted retaliation, so they must point to something more and different).

A proper case or controversy exists only when at least one plaintiff "establish[es] that [she] ha[s] standing to sue," *ibid.—i.e.*, that she has suffered, or will suffer, an injury that is

17

"concrete, particularized, and actual or imminent[.]" *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Because Attorney General Bondi's statements are not harmful in and of themselves, to deduce whether Aaron has sufficiently alleged injury in fact, this Court must look to the single injury Plaintiffs claim as a result of her public comments, namely: the "ongoing chilling of [Aaron's] protected speech." *Id*. ¶ 161.

The Supreme Court has made clear, and the D.C. Circuit has reiterated, that subjective allegations of chilled speech alone do not confer standing. Instead, to meet Article III's injury in fact requirement, a plaintiff's claimed fear of exercising his First Amendment rights must be accompanied by evidence of present or imminent concrete, objective harm. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' [upon the exercise of First Amendment rights] are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). In *Laird*, where the plaintiffs alleged that the mere existence of an Army intelligence data-gathering system chilled the exercise of their First Amendment rights, the Supreme Court found the plaintiffs' alleged chill was not based on "actual present or immediately threatened injury resulting from unlawful government action." *Id*. at 15. In other words, plaintiffs' alleged chill based on a speculative fear of injury at some undetermined time in the future rather than an "objective harm or threat of specific future harm" did not confer standing. *Id*. at 1. In contrast, in *Socialist Workers Party v. Attorney General*, the Supreme Court found sufficient injury to confer standing where, in addition to claiming FBI surveillance and investigative activity at a political convention would have a chilling effect on free speech and debate, the plaintiffs outlined objective, concrete harms that would likely result if the proposed government activity took place, including "dissuading some delegates from actively participating in the convention and possible loss of employment for those identified as being in attendance[.]" 419 U.S. 1314, 1319 (1974). Later, in *Meese v. Keene*, a state senator alleged that the labeling of three films as political propaganda chilled his First Amendment rights and he presented objective evidence legitimizing his fear that displaying films categorized as propaganda would result in harm to his career. 481 U.S. 465, 472-77 (1987). The Supreme Court specifically noted that,

18

merely alleging a subjective chilling effect without more would have been insufficient to satisfy Article III's injury-in-fact requirement. *Id*. at 473-74. Taken together, the Supreme Court's decisions show that, to constitute injury in fact necessary to establish standing, an allegation of chilling must be accompanied by sufficient allegations that engaging in a First Amendment protected activity will result in present or imminent objective harm that is not merely conjectural or hypothetical. *See Meese*, 481 U.S. at 472-74 (damage to reputation and prospects of reelection); *Socialist Workers*, 419 U.S. at 1316, 1318-19 (reduced attendance and participation in a political rally, and career-related repercussions); *Laird*, 408 U.S. at 13-14.

Here, Plaintiffs simply allege that public statements labeling ICEBlock as unlawful and unprotected speech because it endangers law enforcement have resulted in "the ongoing chilling of [Aaron's] protected speech." Compl. ¶ 141. They offer nothing more. Plaintiffs do not identify speech that Aaron is allegedly chilled from engaging in as a result of Defendant Bondi's (or any Defendant's) public statements. In fact, Plaintiffs explicitly allege that, following the officials' commentary, Aaron "did not yield. He did not take down or disable ICEBlock[,]" *id*. ¶ 11, allegations running directly counter to his claimed fear of speaking. And, crucially, Aaron does not allege, alongside his allegation of subjective chill, that he has or will imminently experience a concrete, objective harm at the hands of Defendants. Instead, he asserts the possibility of a hypothetical future retaliatory criminal prosecution based solely on Defendant Bondi's labeling of the ICEBlock app as criminal. But this hypothetical criminal prosecution remains entirely speculative where Plaintiffs do not allege that an investigation or prosecution pursuant to those statements was underway or imminent at the time they filed their Amended Complaint—notably, more than five months after the challenged statements were made. Aaron simply has not alleged a present objective harm, and he cannot manufacture standing by chilling himself in anticipation of some hypothetical future retaliatory action that is not certainly impending. *See Clapper*, 568 U.S. at 402.

Finally, where Aaron has not alleged ongoing or imminent harm beyond ongoing subjective chill, he has not demonstrated standing for the prospective relief he seeks. "[W]hen a

19

plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *FDA*, 602 U.S. at 381. To claim standing based on "[a]n allegation of future injury," a plaintiff must show that "the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 409, 414 n.5). Here, Plaintiffs ask that the Court (1) "[d]eclare that Defendants Bondi, Noem, Homan and Lyons's threats to criminally investigate and/or prosecute Aaron for his role in developing, distributing, and promoting the App violates Aaron's rights under the First Amendment," and (2) "[p]ermanently enjoin Defendants. . . .from threatening, investigating, or prosecuting Aaron" *Id*. ¶¶ 165, 167. But, as outlined above, alleging that the Government could potentially seek to investigate or prosecute Aaron at some point in the future, absent allegations of any concrete steps taken to do so, does not bring Plaintiffs' harm allegations outside of the realm of "strictly speculative." *Media Matters for Am. v. Paxton*, 138 F.4th 563, 581-82 (D.C. Cir. 2025). Because Plaintiffs' request for prospective relief is, at most, tied to subjective chill and speculative future injury, they have not established standing for the prospective relief they seek.[4]

Where Plaintiffs lack standing to bring a First Amendment retaliation claim against any Defendant, the Court must dismiss their Second Claim for Relief.

## II.    Plaintiffs Have Not Stated a First Amendment Coercion Claim.

Should the Court find Plaintiffs sufficiently alleged standing to assert a First Amendment coercion claim against Attorney General Bondi and the Doe Officials—which it should not—the Court should alternatively dismiss Plaintiffs' "First Claim for Relief," Amend. Compl. ¶¶ 137-51, because Plaintiffs fail to state a viable First Amendment coercion claim under *Vullo*. Plaintiffs allege that "Defendant Bondi's demand to Apple to remove ICEBlock from the App store constitutes a 'scheme of state censorship.'" *Id*. ¶ 141. They assert that "Defendant Bondi

---

[4] Because this Court lacks jurisdiction to issue injunctive relief, it also lacks jurisdiction to issue declaratory relief, which "would amount to an advisory opinion without the possibility of any judicial relief." *California*, 593 U.S. at 673 (citation omitted).

and the Doe Defendants have the power to coerce Apple by investigating, regulating, prosecuting, and otherwise interfering with its business functions, or by offering it inducements of governmental benefits. And Attorney General Bondi and the Doe Defendants did threaten Apple with such adverse action." *Id*. The thrust of Plaintiffs' claim, therefore, appears to be that the alleged conversations between Attorney General Bondi and the Doe Officials, and Apple, constituted impermissible government coercion of a private entity resulting in the suppression of Plaintiff Aaron's speech, in violation of the First Amendment. But Plaintiffs fail to state a First Amendment coercion claim where they offer nothing more than conclusory allegations about the *content* of these alleged communications, failing entirely to allege any specific actions by Attorney General Bondi and the Doe Officials that could be "reasonably understood to convey a threat of adverse government action," *Vullo*, 602 U.S. at 177, against Apple if Apple chose not to remove ICEBlock from the App Store at the Government's request. Their premise is that, because the Government has authority generally, and because it met with a third-party, and that third-party did something that Plaintiffs disagree with, the Government *must* have coerced the third-party. That is neither logically correct nor based in their factual allegations.

In *Vullo*, the Supreme Court explained: "to state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." 602 U.S. at 177. The Supreme Court outlined that determining "whether a reasonable person would perceive a government official's communications as coercive" requires looking to: (1) the government official's authority, (2) the communications between the government official and the entity, and (3) the coerced party's reaction. *Id*. at 191-93. Here, where the Amended Complaint contains only speculation as to the content of any direct communications between Attorney General Bondi and the Doe Officials, and Apple, Plaintiffs fail to allege communication that a reasonable person would understand as explicitly or impliedly threatening adverse government action against Apple.

The Court's analysis in *Vullo* makes clear that, for purposes of a First Amendment

21

coercion claim, a court should look to the oral and written communications between the government official and the third party entity. *Id*. at 191-93. Here, Plaintiffs allege a single instance of direct communication with Apple—a discussion between Attorney General Bondi and the Doe Officials, and Apple—Amend. Compl. ¶ 15, and nowhere allege that, during this discussion, statements were made analogous to Superintendent Vullo's oral and written statements that the Supreme Court found could be "reasonably understood" to threaten civil enforcement actions or criminal prosecution. *Vullo*, 602 U.S. at 193. Plaintiffs simply posit, "on information and belief," that the Defendants "convey[ed] threats of official sanction or inducement should Apple not remove ICEBlock from the App Store." This "threadbare recital[] of the elements of" a *Vullo* claim is not enough under *Iqbal*. *Iqbal*, 556 U.S. at 678.

In *Vullo*, the Supreme Court found the NRA stated a plausible First Amendment coercion claim by alleging that DFS Superintendent Vullo: (1) suggested during a meeting with insurance executives that insurance entities could avoid liability for infractions if they aided DFS' campaign against the NRA; and (2) issued guidance letters reminding DFS-regulated entities of their obligation to consider their "reputational risks" of being associated with the NRA. *Id*. at 184. Here, the Amended Complaint posits that Attorney General Bondi and the Doe Officials *could* "investigat[e], regulat[e], prosecut[e], and otherwise interfere[e] with [Apple's] business functions," and asserts that these Defendants either threatened Apple with "such adverse action," or offered "inducements of governmental benefits." Amend. Compl. ¶ 141. But no analogy to *Vullo* can be drawn based on such vague and noncommittal assertions—based on a long list of actions, any of which Plaintiffs allege *might* have occurred. Plaintiffs do not specifically allege, for instance, that the Attorney General or the Doe Officials threatened to employ regulatory authority or implied Apple would face investigation or enforcement actions should Apple choose not to comply with the government's request to remove the ICEBlock App. *See Vullo*, 602 U.S. at 194. And Plaintiffs do not even suggest what "government benefits" Defendants *may* have offered to Apple. Plaintiffs' coercion claim simply cannot survive where Plaintiffs do not offer more than the "mere possibility" that Defendant Bondi and the Doe Officials threatened or

22

induced Apple. *Iqbal*, 556 U.S. at 679.

To the extent Plaintiffs then assert that public statements made by Defendants Noem, Lyons, and Homan admonishing the ICEBlock App and CNN's coverage of the App were "made in concert and coordination with Defendant Bondi's scheme to coerce Apple" and "reasonably understood to convey a threat of adverse government action against any entity making ICEBlock available[,]" Amend. Compl. ¶ 143, Plaintiffs are asking the Court to consider allegations as to Defendants Noem, Lyons, and Homan despite that Plaintiffs bring their coercion claim only against Attorney General Bondi and the Doe officials.[5] *See id*. at 40. To support a coercion claim against Attorney General Bondi and the Doe officials, Plaintiffs must rely only on allegations as to *these* Defendants. *See Murthy*, 603 at 61. Regardless, this is another misguided attempt to draw support from the Supreme Court's analysis in *Vullo*, and Plaintiffs' attempt to analogize entirely misses the mark where Plaintiffs focus on statements by the Defendant officials critical of *Aaron* and *CNN*, and devoid of any reference to Apple or suggestion that legal sanctions or other adverse government action should be taken against any application platform. Indeed, the alleged statements suggesting ICEBlock poses a threat to law enforcement and suggesting the App may be unlawful are a far cry from Superintendent Vullo's communications to insurance entities over which she had direct regulatory and enforcement authority—communications that implied DFS would pursue enforcement actions against insurance entities that refused to cut ties with the NRA. *See Vullo*, 602 U.S. at 177. Ultimately, Plaintiffs allege no statements by Defendants Noem, Lyons, or Homan directed at—let alone threatening—*Apple*.

The complaint, assessed as a whole, does not plausibly allege that Attorney General Bondi or the Doe Officials "threatened to wield [their] power against" Apple if Apple refused to pull the ICEBlock App from the App Store. *Id*. at 194. Simply put, Plaintiffs do not once allege an action the Government threatened—explicitly or impliedly—to take against Apple should

---

[5] Plaintiffs' initial complaint brought a First Amendment coercion claim against all Defendants, ECF No. 1 at 34, but Plaintiffs' Amended Complaint brings a First Amendment coercion claim against only Attorney General Bondi and the Doe Officials, ECF No. 22 at 40.

Apple opt to keep ICEBlock in the App Store. Therefore, Plaintiffs' First Claim for Relief must be dismissed for failure to state a claim.

### III.    Plaintiffs Have Not Stated a First Amendment Retaliation Claim.

Plaintiffs claim that Defendants Bondi, Noem, Lyons, and Homan "violated Aaron's First Amendment rights by threatening Aaron. . . .with criminal prosecution based on his lawful development, distribution, and promotion of the App." Compl. ¶ 156. (Again, to be clear, this claim is not based on the App itself being taken down, *see id*. ¶¶ 152-63.) Plaintiffs allege that "Defendants' threats constitute retaliation," *id*. ¶ 159, and "were intended to deter Aaron from engaging in further protected speech" and "to chill a person of ordinary firmness from continuing to speak or express similar viewpoints[,]" *id*. ¶ 158. But Plaintiffs fail to state a viable First Amendment retaliation claim where they do not allege concrete adverse action—and the adverse effects of that action on Plaintiffs—undertaken by any Defendant in response to Aaron's speech, instead mischaracterizing the statements about the ICEBlock App and its promotion as retaliatory, and pointing to investigations into non-parties.

"A plaintiff pursuing a First Amendment retaliation claim must show, among other things, that the government took an 'adverse action' in response to his speech that 'would not have been taken absent the retaliatory motive.'" *Houston Cmty. College Sys. v. Wilson*, 595 U.S. 468, 477 (2022) (quoting *Nieves v. Barlette*, 587 U.S. 391, 399 (2019)). Some "adverse actions" recognized by the Supreme Court as retaliatory include arrest, *Nieves*, 587 U.S. at 396; prosecution, *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006); and termination of an employee, *Perry v. Sindermann*, 408 U.S. 593, 596–97 (1972).

In this circuit, a plaintiff asserting First Amendment retaliation must show: "(1) he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory [or "adverse"] action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016).

24

The D.C. Circuit's recent decision in *Media Matters* is particularly enlightening here. *See* 138 F.4th at 569. In that First Amendment retaliation suit, the Court of Appeals applied the "objective ordinary firmness test" adopted by the Eleventh Circuit, requiring plaintiffs bringing a First Amendment retaliation claim "'to allege that the retaliatory acts of the defendants *adversely affected them.*'" *Id*. at 581 (emphasis added) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005)).[6] The court held that an investigative reporter and a non-profit watchdog media company satisfied both, the Article III injury in fact requirement, and the "ordinary firmness" prong of the D.C. Circuit's First Amendment retaliation inquiry when they established that the media company was the target of an active government investigation (as confirmed by the defendant state attorney general in a press release and interviews) and a sweeping civil investigation demand in response to their published article, resulting in "special burdens on their newsgathering activities and operation of their media company." *Id*. The court contrasted plaintiffs' ability to establish that a "retaliatory investigation [had] already begun[,]" *id*. at 582, and their provision of support for "their claims of adverse effects [from the investigation] to their news operations and journalistic mission[,]" *id*. at 573, with instances where future enforcement actions by the Government (and their adverse effects on plaintiffs) were "strictly speculative." *Id*. at 581-82.

Earlier this year, this court applied the objective ordinary firmness test adopted in *Media Matters*, finding the termination of grant awards was an "adverse action" with adverse effects including plaintiffs having to "shutter projects, lay off staff, and break commitments to partner organizations and sub-awardees." *Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs*., No. 25-cv-4505, 2026 WL 80796, at *15-16 (D.D.C. Jan. 11, 2026) ("The objective 'ordinary firmness' test requires plaintiffs to allege that the retaliatory acts of the defendants adversely affected them." (citing *Media Matters*, 138 F.4th at 581)).

---

[6] In *Bennett v. Hendrix*, the Eleventh Circuit explained that satisfying the objective ordinary firmness test by alleging adverse effects from the retaliatory acts of a defendant also satisfies the Article III injury in fact requirement. 423 F.3d 1247, 1247 (11th Cir. 2005).

Here, Plaintiffs' labeling of Defendants' critical speech as retaliation is insufficient for several reasons. Most obviously, Plaintiffs have not alleged any concrete "adverse action" engaged in by Defendants. Plaintiffs label Defendants' statements criticizing ICEBlock and CNN's coverage of the App as retaliatory, *see, e.g.*, Compl. ¶ 97 ("The retaliation from Defendants Bondi, Noem, Lyons and Homan was also immediate . . . Defendants falsely claimed that Plaintiffs were engaged in criminal conduct"); *id.* ¶ 159 ("Defendants' threats constitute retaliation"), but do not allege a single concrete action undertaken by Defendants pursuant to their statements. Plaintiffs do not allege the commencement of a criminal investigation in response to Aaron's speech. Nor do they allege that criminal charges have been, or imminently will be, brought against Aaron because of that speech. Indeed, the relief Plaintiffs seek, namely: an injunction "prohibiting Defendants . . . from threatening or initiating criminal prosecution," *id.* ¶ 163, makes this clear. And, even if Aaron had alleged the commencement of a criminal investigation in response to his speech, this allegation alone would not satisfy the D.C. Circuit's objective ordinary firmness test without further allegations of adverse effects of the investigation on Aaron's continued speech or business operations. *See Media Matters*, 138 F.4th at 581.

Even assuming Aaron engaged in speech protected by the First Amendment when he developed and promoted ICEBlock, the Government speaking critically of a citizen's legal conduct is not constitutionally impermissible adverse action. Indeed, "[i]f the First Amendment were thought to be violated any time a private citizen's speech or writings were criticized by a government official, those officials might be virtually immobilized." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1016 (D.C. Cir. 1991); *see also Block v. Meese,* 793 F.2d 1303, 1313 (D.C. Cir. 1986) ("[W]e know of no case in which the first amendment has been held to be implicated by governmental action consisting of no more than governmental criticism of the speech's content."

Finally, while Plaintiffs do not allege Aaron's criminal prosecution is underway, even if this hypothetical prosecution were to commence, it would be premature to label the government action as retaliatory because a finding of probable cause can negate an allegation of retaliation.

26

*Hartman*, 547 U.S. at 265–66 (holding that, because of the presumption of prosecutorial regularity, an individual alleging retaliatory prosecution must also prove that their prosecution was not supported by probable cause). And an order prohibiting any future criminal prosecution wholesale, as plaintiffs appear to seek, would be inconsistent with that caselaw and the Executive Branch's "exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974).

In sum, the complaint, assessed as a whole, does not plausibly allege that Defendants "took an 'adverse action' in response to [Aaron's] speech," *Houston Community College System*, 595 U.S. at 477, or "allege that the retaliatory acts of the defendants adversely affected [Aaron,]" *Media Matters*, 138 F.4th at 581. Therefore, Plaintiffs' Second Claim for Relief must be dismissed for failure to state a claim.

## CONCLUSION

For all the reasons discussed herein, the Court should dismiss Plaintiffs' Complaint.

Dated: March 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

JOSEPH BORSON
Assistant Branch Director
Federal Programs Branch

/s/ *Alexandra L. Yeatts*
ALEXANDRA L. YEATTS (CA Bar No. 358762)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005

27

Telephone: (202) 353-5677
Email: Alexandra.Yeatts@usdoj.gov

*Attorneys for Defendants*