**FIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSHUA AARON,
ALL U CHART, INC.,

        *Plaintiffs*,

    v.

PAMELA J. BONDI, *et al*.,

        *Defendants*.

No. 1:25-cv-04250-DFL

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.     Plaintiffs Have Not Established Article III Standing to Assert a First Amendment Coercion Claim Against the Attorney General and the Doe Defendants. ......................... 3

         A.     *Murthy*'s Substantive Law is Applicable at the Pleading Stage. ........................... 4

         B.     Plaintiffs Fail to Sufficiently Allege Traceability. .................................................... 5

         C.     Plaintiffs Fail to Allege an Ongoing Pressure Campaign as is Necessary to Establish Standing for Prospective Injunctive Relief. ............................................ 8

         D.     Jurisdictional Discovery is Not Warranted. ........................................................... 10

II.    Plaintiffs Fail to State a Legally Cognizable First Amendment Coercion Claim. ............. 11

III.   Plaintiffs Lack Article III Standing to Assert a First Amendment Retaliation Claim Against the Named Defendants. ................................................................................. 15

IV.   Plaintiffs Fail to State a Legally Cognizable First Amendment Retaliation Claim. .......... 18

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*,
No. 25-cv-4505, 2026 WL 80796 (D.D.C. Jan. 11, 2026).................................................. 19, 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................................. 4

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016) ........................................................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................... *passim*

*Backpage.com, LLC v. Dart*,
807 F.3d 229 (7th Cir. 2015) ............................................................................................ 12

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963)................................................................................................... 4, 11, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................ 4, 5, 7, 8

*Bennett v. Hendrix*,
423 F.3d 1247 (11th Cir. 2005) ......................................................................................... 19

*Block v. Meese*,
793 F.2d 1303 (D.C. Cir. 1986).......................................................................................... 19

*Changizi v. Dep't of Health & Hum. Servs.*,
82 F.4th 492 (6th Cir. 2023) ........................................................................................ 10, 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)........................................................................................................... 17

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)............................................................................................................. 9

*Hartman v. Moore*,
547 U.S. 250 (2006)..................................................................................................... 18, 19

*Ho v. Garland*,
106 F.4th 47 (D.C. Cir. 2024)...................................................................................... 3, 5, 15

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994).............................................................................................. 6

*Media Matters for Am. v. Paxton*,
  138 F.4th 563 (D.C. Cir. 2025)..................................................................... 3, 19

*Meese v. Keene*,
  481 U.S. 465 (1987)..................................................................................... 17

*Murthy v. Missouri*,
  603 U.S. 43 (2024)................................................................................*passim*

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  602 U.S. 175 (2024)..............................................................................*passim*

*Nieves v. Barlette*,
  587 U.S. 391 (2019)..................................................................................... 19

*Penthouse Int'l, Ltd. v. Meese*,
  939 F.2d 1011 (D.C. Cir. 1991)................................................................... 20

*Perry v. Sindermann*,
  408 U.S. 593 (1972)..................................................................................... 19

*Tuttle v. Metro. Gov't of Nashville*,
  474 F.3d 307 (6th Cir. 2007) ......................................................................... 8

*U.S. Telecom. Ass'n v. FCC*,
  825 F.3d 674 (D.C. Cir. 2016)...................................................................... 17

*Woodhull Freedom Found. v. United States*,
  948 F.3d 363 (D.C. Cir. 2020)...................................................................... 17

**Rules**

Fed. R. Civ. P. 25(d) ........................................................................................ 1

**INTRODUCTION**

As Plaintiffs themselves acknowledge in their operative complaint, Apple removed Plaintiffs' App because—as Apple itself stated—ICEBlock violated the App Store Guidelines. Plaintiffs fail to plead non-conclusory factual allegations to establish, under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that the Government coerced Apple to remove ICEBlock, as opposed to Apple acting according to its own independent incentives to moderate content. Plaintiffs also fail to allege injury traceable to Defendants' public statements critical of ICEBlock and CNN's promotion of the App. Those pleading failures doom Plaintiffs' case.

Plaintiffs' First Amendment coercion claim must be dismissed on standing grounds because Plaintiffs fail to sufficiently allege that Apple's removal of ICEBlock from the App Store is traceable to alleged communications between Defendants and Apple, and not the result of Apple's "independent incentives to moderate content," *Murthy v. Missouri*, 603 U.S. 43, 60 (2024). Plaintiffs repeatedly cite to former Attorney General Bondi's[1] public use of the word "demand," and put forth conclusory speculations about direct communications between Defendants and Apple, but this cannot rescue Plaintiffs from their inability to allege that Apple lacked independent incentives to remove the App from the App Store when presented with relevant information by law enforcement.

Even if Plaintiffs have adequately traced Apple's content moderation decision to Defendants, Plaintiffs fail to sufficiently allege the "ongoing pressure campaign" necessary to establish standing for prospective injunctive relief in the First Amendment coercion context. *Id*. at 69. Plaintiffs point to Attorney General Bondi's use of the word "comply" in a public statement and discuss the Administration's allegedly aggressive immigration enforcement

---

[1] The Amended Complaint also names as a Defendant Pamela Bondi in her official capacity as then-Attorney General. Under Federal Rule of Civil Procedure 25(d), Todd Blanche, current Acting Attorney General, is automatically substituted as a Defendant. The Amended Complaint names as a Defendant Kristi Noem in her official capacity as then-Secretary of Homeland Security. Under Federal Rule of Civil Procedure 25(d), Markwayne Mullin, the current Secretary of Homeland Security, is automatically substituted as a Defendant.

policies and practices, but this does not change the reality that Plaintiffs have not alleged a single interaction between Defendants and Apple since October 2025—let along an allegedly threatening or coercive Government interaction intended to pressure Apple to *keep* ICEBlock out of the App Store.

Should this Court find Plaintiffs have sufficiently alleged standing to bring their First Amendment coercion claim, Plaintiffs' claim nonetheless fails on the merits. Under *Nat'l Rifle Ass'n of Am. v. Vullo*, Plaintiffs fail to state a viable First Amendment coercion claim because they do not allege nonconclusory facts establishing communications by Defendants that could be "reasonably understood to convey a threat of adverse government action" against Apple if Apple chose not to remove ICEBlock from the App Store. 602 U.S. 175, 177 (2024). Saying that the Government "demanded" something, by itself, does not state a claim under *Vullo*, where the Supreme Court concluded that far more specific allegations, including the government official's direct threat to bring regulatory consequences against parties who did not take her preferred actions against the plaintiff, satisfied their pleading requirements. Indeed, Plaintiffs' Amended Complaint fails to sufficiently allege facts that, taken as true, would establish that Apple understood statements critical of ICEBlock and CNN's promotion of the App as threatening towards *Apple*. And the Amended Complaint contains nothing more than speculation and conclusory allegations about the content of the alleged direct communication between Attorney General Bondi and the Doe Officials, and Apple. Pointing to the Attorney General's vast enforcement authority, this Administration's immigration enforcement priorities, and Apple's quick decision-making, does not revive Plaintiffs' coercion claim. Missing are any concrete, non-conclusory allegations of coercion.

Next, Plaintiffs' First Amendment retaliation claim must be dismissed on standing grounds where Plaintiffs fail to allege ongoing or imminent, concrete injury traceable to Defendants' public statements. Plaintiffs fail to sufficiently allege that each official against whom they bring their retaliation claim characterized the ICEBlock App as unlawful and called for Aaron's criminal prosecution. Further, they do not allege a single concrete step taken

pursuant to Defendants' "retaliatory threats" to initiate Aaaron's criminal investigation or prosecution, despite the passage of nearly seven months since the public statements were made. Plaintiffs thus allege, at best, only subjective chill and self-inflicted injury rooted in speculation about future enforcement actions—neither of which are sufficient to satisfy Article III's injury-in-fact requirement. Finally, where Plaintiffs do not allege that Aaron's criminal prosecution is underway, they cannot establish the hypothetical government action is retaliatory because they cannot show the absence of probable cause.

Even if this Court finds Plaintiffs have sufficiently alleged standing to bring their First Amendment retaliation claim, it must be dismissed where Plaintiffs do not allege concrete "adverse action"—and the unavoidable "adverse effects" of that action on Plaintiffs—undertaken by the Government in response to Aaron's speech. *See Media Matters for Am. v. Paxton*, 138 F.4th 563, 581 (D.C. Cir. 2025)*.* Plaintiffs allege that Aaron has *chosen* to engage in altered behaviors, but his choice to change his behavioral patterns does not equate to the adverse effects of government action. Plaintiffs cannot claim self-imposed injury to establish Article III standing.

For the reasons discussed herein, and those outlined in Defendants' Memorandum in Support of Defendants' Motion to Dismiss, ECF No. 24-1 (Mot.), the Court should dismiss Plaintiffs' Amended Complaint, ECF No. 22 (Amend. Compl.).

## ARGUMENT

I.    **Plaintiffs Have Not Established Article III Standing to Assert a First Amendment Coercion Claim Against the Attorney General and the Doe Defendants.**

Plaintiffs' First Amendment coercion claim fails on standing grounds and must be dismissed. Plaintiffs fail to sufficiently allege facts "to dispel [the] 'obvious alternative explanation[,]'" *Ho. v. Garland*, 106 F.4th 47, 54 (D.C. Cir. 2024), that Apple removed ICEBlock from the App Store because of Apple's "independent incentives to moderate content," *Murthy*, 603 U.S. at 60, rather than because of actions by Attorney General Bondi and the Doe Officials. Put differently, Plaintiffs fail to allege facts that, taken as true, establish that the harms

they claim as a result of ICEBlock being removed from the App Store are traceable to Government actions rather than to Apple's informed content moderation decision.

**A.  *Murthy*'s Substantive Law is Applicable at the Pleading Stage.**

Plaintiffs take issue with Defendants' reliance on *Murthy* to discuss traceability because the *Murthy* plaintiffs were seeking a preliminary injunction, and because the parties in *Murthy* underwent discovery prior to the Supreme Court finding that the plaintiffs lacked standing. Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 26. (Opp.) at 11. Specifically, Plaintiffs outline that the *Murthy* plaintiffs were required to make a "clear showing" that they were "likely" to establish traceability as they sought a preliminary injunction, and to point to factual evidence in the record, *id*. at 10-11; whereas, here, at the pleading stage, Plaintiffs are required to present "well-pleaded allegations" that "the Court must accept . . .as true," *id*. at 11. (citing *Iqbal*, 556 U.S. at 678–79, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is true, but irrelevant.

To be sure, at the pleading stage, Plaintiffs must only allege (not prove) non-conclusory material facts. *See Twombly*, 550 U.S. at 555 (explaining that a plaintiff only needs "to raise a right to relief above the speculative level"). But, in order to determine "which facts are material" in the first place, the Court must apply the relevant "substantive law," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986), which remains the same at all stages of the litigation, *see, e.g., Vullo*, 602 U.S. at 175 (evaluating a First Amendment coercion claim at the pleading stage using the substantive legal framework adopted in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), which was decided at the final-judgment stage).

As is relevant here, *Murthy* identifies the substantive law for determining whether a plaintiff has standing to seek injunctive relief against the Government for alleged censorship by third-party platforms. Specifically, *Murthy* provides that standing in this context requires a showing of "substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." 603 U.S. at 69. This substantive law is equally applicable at the pleading stage as it is at the preliminary-injunctive stage. Where, as

4

here, the case is at the pleading stage, Plaintiffs need not prove such a "substantial risk," but they must nevertheless plead it with non-conclusory factual allegations. *See Iqbal*, 556 U.S. at 678–79. The Court should apply *Murthy* to conclude that the Plaintiffs here have failed to plead what the plaintiffs in *Murthy* failed to prove: that the alleged censorship was caused by the Defendants and that there is a "substantial risk of future injury that is traceable to the defendants and likely to be redressed by an injunction against them." 603 U.S. at 69.

### B. Plaintiffs Fail to Sufficiently Allege Traceability.

Plaintiffs argue that Attorney General Bondi's October 2, 2025 public statement that the Government "reached out to Apple . . .demanding they remove the ICEBlock app from their App Store—and Apple did so[]" sufficiently establishes traceability. Opp. at 10. Plaintiffs assert that, because the Attorney General's announcement that she spoke with Apple used the word "demand[]" and Apple subsequently removed ICEBlock from the App Store, Apple's content moderation was the result of impermissible government coercion. But allegations that a conversation occurred between Defendants and Apple, coupled with Apple's subsequent decision to remove ICEBlock, is insufficient to establish that the removal decision was caused by Defendants. That is because Apple asserted an independent basis for termination: noncompliance with App Store Guidelines, Amend. Compl. ¶¶ 121-22.

While, "[a]t the motion to dismiss stage, a plaintiff need not 'rule out every possible lawful explanation,'" he must "dispel any 'obvious alternative explanation[s].'" *Ho*, 106 F.4th 47 at 54 (citations omitted). As Defendants have outlined, the obvious alternative to Plaintiffs' coercion theory is that, when presented with evidence of serious safety risks posed by the App to law enforcement, Apple chose to reevaluate ICEBlock's compliance with its App Store Guidelines and freely exercised its discretion to remove the App. *See* Mot. at 11. This "obvious alternative explanation" negates the plausibility of Plaintiffs' unlawful explanation for Apple's actions. *Id*. (citing *Iqbal*, 556 U.S. at 682 and *Twombly*, 550 U.S. at 567). Plaintiffs choose to entirely disregard this plausible alternative—an alternative explanation explicitly presented by Apple on multiple occasions, Amend. Compl. ¶¶ 121-25, and consistent with Apple's initial

5

hesitation to publish the App, *id*. ¶ 86—by labeling it as "pretextual." *See* Amend. Compl. ¶ 120; Opp. at 13, 15.

Plaintiffs assert that, separate and apart from Attorney General Bondi's October 2 statement, "numerous allegations" in their operative complaint support their claim that their injury is directly traceable to the Defendants. Opp. at 12. But, while the Court "must draw all *reasonable* inferences in the plaintiff's favor," *see* Mot. at 10 (emphasis added), here, Plaintiffs ask the Court to "draw[] links that [Plaintiffs] [themselves] ha[ve] not set forth," *Murthy*, 603 U.S. at 68 n.7, and "accept inferences . . . unsupported by the facts set out in the complaint[,]" *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). For instance, Plaintiffs ask the Court to infer that "the Department of Justice intended to coerce Apple to remove ICEBlock and that it will continue to do so unless enjoined" based on allegations that Defendants Lyons, Homan, and Noem stated that DOJ was looking into the legality of ICEBlock and CNN's promotion of the App, and that individuals who illegally interfere with law enforcement operations will be prosecuted. Opp. at 12 (citing Amend. Compl. ¶¶ 98-105). Similarly unreasonable is Plaintiffs' assertion that their allegations that the "Attorney General refused to disclose the pertinent October 2, 2025 communications with Apple in response to both FOIA and Congressional requests . . . supports the inference that those communications were in fact coercive 'demands[.]'" Opp. at 12 (citing Amend. Comp. ¶ 127-28.) Here, without citing to any specific FOIA litigation, Plaintiffs ask the Court to accept that the Government has "refused" to produce documents in response to the request and to understand this alleged refusal to indicate that coercion took place—as opposed to, for example, the fact that documents are exempt under the FOIA, or simply that DOJ has yet to process the documents or respond to the request.

Plaintiffs place special emphasis on their allegation that Apple approved ICEBlock and "allowed it to remain [in] the App Store for six months until" the alleged discussion between the Attorney General and Apple took place. Opp at 12. They direct the Court to conclude that the conversation between the Government and Apple must have been coercive if Apple removed ICEBlock after approving it and keeping it in the App Store for an extended period. *Id*. Yet, this

6

"inference" requires the Court to ignore the more (or at least equally) plausible explanation that the Government provided Apple with relevant information new to Apple and Apple then made an informed decision on its own to take the App down. *See Iqbal*, 556 U.S. at 682 (outlining that an "obvious alternative explanation" negates plausibility (citing *Twombly*, 550 U.S. at 567)).

Next, Plaintiffs focus on Apple's removal of the App that allegedly occurred shortly after the company spoke with Attorney General Bondi and, therefore, allegedly without a careful re-examination of the App. Opp. at 12-13. And they renew their criticism of Apple's cited justification for removing ICEBlock as straying from the exact wording of the App Store Guidelines, *id*. at 12, as well as Apple's decision to remove ICEBlock despite permitting other law enforcement tracking apps to remain active. In response, Defendants, once again, note that Plaintiffs' displeasure with Apple's decision-making process or stated justification is only appropriately directed at Apple. *See* Mot. at 12. Allegations that Apple removed the App shortly after speaking with Defendants, Opp. at 16, do not warrant the inference that Apple's decision was compelled by Defendants, rather than an exercise of its own discretion. Nor do allegations that Apple's stated reason for removing the App did not apply a word for word standard set forth in its App Review Guidelines, *id*., justify an inference that Apple's content moderation decision was the result of impermissible Government actions rather than an exercise of Apple's independent judgment.

Plaintiffs also attempt to distinguish *Murthy*. They explain that, in *Murthy*, the "alleged coercive communications [by the government defendants] were received well after the platforms" began undertaking "moderation actions." Opp. at 13 (citing *Murthy*, 603 U.S. at 62-65). This, they say, demonstrated that the platforms had an independent incentive to moderate content ahead of any communication from the Government. But this simply underscores the Supreme Court's logic that it is impossible to establish traceability to Government defendants when the removal of content by the platform occurred in advance of any allegedly coercive communications by the Government. It does not conclude that traceability exists if those communications and the eventual outcome were contemporaneous in time. At best, Plaintiffs'

7

citations to *Murthy* establish that it is *possible* that the Government coerced Apple to remove ICEBlock because the alleged conversation between the DOJ and Apple occurred prior to Apple's removal of the App. But temporal connection alone does not dictate plausibility. *Cf. Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim.")

Citing to the conclusory allegations made in their Amended Complaint, Plaintiffs assert that "the Court must accept as true" their labeling of "Apple's stated rationale [as] pretextual," and their assertion that "Apple would not have removed ICEBlock but for the then-Attorney General's 'demand.'" Opp. at 15 (citing Amend. Compl. ¶¶ 112, 115, 120). But the Court need not—and should not—accept Plaintiffs' stubborn "because I said so" logic. The court must accept well-pleaded facts, not the legal conclusions plaintiffs assert on the basis of those facts. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555)). Nor does Plaintiffs' newfound characterization of Apple's explanation for its moderation decision—an explanation that Plaintiffs' own allegations outline as having been publicly issued and privately sent to Aaron concurrent with Apple's removal of the App, Amend. Compl. ¶¶ 121-122—as "post hoc" resurrect Plaintiffs' assertions previously shown by Defendants to be unsupported by specific factual allegations, *see* Mot. at 10.

Because Plaintiffs fail to untangle Attorney General Bondi and the Doe Officials' purported communications with Apple from Apple's "independent incentives to moderate content," *Murthy*, 603 U.S. at 60, the Court must dismiss their First Claim for Relief.

### C. Plaintiffs Fail to Allege an Ongoing Pressure Campaign as is Necessary to Establish Standing for Prospective Injunctive Relief.

Even if Plaintiffs have adequately tied Apple's content moderation decision to impermissible pressure by Attorney General Bondi or the Doe Officials, Plaintiffs fail to allege "a substantial risk of *future* injury that is *traceable to the Government defendants* and likely to be redressed by an injunction against them." *Murthy*, 603 U.S. at 58 (emphasis added). Indeed,

8

"when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Specifically, to establish standing to obtain forward-looking injunctive relief against government coercion, plaintiffs must sufficiently allege an "ongoing pressure campaign." *Murthy*, 603 U.S. at 69. Here, Plaintiffs' own time-limited allegations demonstrate that any *future* harm at the hands of then Attorney General Bondi and the Doe Defendants was entirely speculative at the time they filed their Amended Complaint.

Attempting to allege an "ongoing pressure campaign," Plaintiffs speak of the Administration's "aggressive immigration enforcement policies and practices." Opp. at 18. Yet, Plaintiffs cannot establish an entitlement to prospective injunctive relief "[p]ermanently enjoin[ing] Defendants . . . from coercing, threatening, or demanding Apple or other app distribution services in order to stop distribution of the ICEBlock[,]" Amend. Compl. ¶166, through a discussion of an alleged "policy of mass deportation" and "aggressive enforcement measures by ICE," Opp. at 18. Instead, Plaintiffs must allege continued actions by Attorney General Bondi or the Doe Officials intended to pressure Apple to restrict Aaron's speech by keeping ICEBlock out of the App Store. They do not.

Plaintiffs suggest that Attorney General Bondi's statement on October 8 that "[w]e had Apple and Google take down the ICEBlock apps. Hope they continue to comply[,]" sufficiently alleges the requisite ongoing pressure. This is unconvincing where Plaintiffs do not allege one instance of Government communication with Apple in over six months, let alone an allegedly threatening or coercive communication. As in *Murthy*, where the "record indicated that the government's threats to the social media platforms about COVID-19 had subsided and become, at most, sporadic at the time plaintiffs filed the action[,]" 603 U.S. at 72, here, Plaintiffs' Amended Complaint indicates that contact between the Government and Apple had *entirely* subsided by October 2, 2025, Amend. Compl. ¶ 115.

Next, Plaintiffs suggest that Defendants' failure to "disavow their belief that ICEBlock was rightfully removed from the App Store" or say "anything to imply that they would 'permit

Apple to restore' [the App]," Opp. at 18, equates to continued pressure from Defendants. But allegations of failure to disavow past alleged coercion do not amount to allegations of continued pressure. *See Murthy*, 603 U.S. at 73 ("[W]ithout evidence of continued pressure from the defendants, . . . the platforms remain free to enforce, or not to enforce, those policies—even those tainted by initial government coercion.").

Finally, Plaintiffs' assertions that Aaron "is suffering a continuing injury" due to his inability "to update or create new features for ICEBlock," lost user access to ICEBlock, and an inability to meaningfully distribute ICEBlock, Opp. at 18 (citing Amend. Compl. ¶¶ 131, 134), does not entitle Aaron to prospective injunctive relief where Plaintiffs have not sufficiently alleged *ongoing* coercion preventing Apple's reinstatement of the App. *See Murthy*, 603 U.S. at 73.

Plaintiffs do not allege even a single instance of Government interaction with Apple over the last six months. As such, Plaintiffs' claims of an ongoing pressure campaign do not survive the *Iqbal* plausibility standard, *see Iqbal*, 556 U.S. at 679, and the Court lacks jurisdiction to issue prospective injunctive relief.

### D. Jurisdictional Discovery is Not Warranted.

Plaintiffs invite (in an opposition, not a proper motion) the Court to grant limited jurisdictional discovery into Defendants' non-public communications with Apple if Plaintiffs have not sufficiently established standing to bring their First Amendment coercion claim. *See* Opp. at 20. They state that they "have a good-faith belief that the contents of the non-public communications" between Attorney General Bondi and the Doe Defendants, and Apple, "will confirm that Apple removed ICEBlock due to unconstitutional coercion." *Id*. But jurisdictional discovery is not warranted here. Indeed, "federal courts will not 'unlock the doors of discovery' for a fishing expedition based on a plaintiff's speculative assertions." *Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492, 498 (6th Cir. 2023) (rejecting plaintiffs' assertion that they "had no means of acquiring concrete information to corroborate [their] supposition without a discovery order") (citing *Iqbal*, 556 U.S. at 678-79). Crucially, even learning exactly what was discussed

10

between the Government and Apple in October 2025 cannot cure Plaintiffs' inability to allege continued interactions between DOJ and Apple—coercive or otherwise—and their resulting inability to establish entitlement to the prospective relief they seek.

## II.    Plaintiffs Fail to State a Legally Cognizable First Amendment Coercion Claim.

Should this Court find Plaintiffs sufficiently alleged standing to bring a First Amendment coercion claim against Attorney General Bondi and the Doe Officials, Plaintiffs' "First Claim for Relief," Amend. Compl. ¶¶ 137-51, fails on the merits. Where Plaintiffs offer only speculation as to the content of any direct communications between Attorney General Bondi and the Doe Officials, and Apple, they fail to allege communication that could be "reasonably understood to convey a threat of adverse government action" against Apple if Apple chose not to remove ICEBlock from the App Store. *Vullo*, 602 U.S. at 177.

While it is true that, in the First Amendment coercion context, courts consider the acting government official's authority, the surrounding context, and the reaction of the coerced party, *Bantam Books*, 372 U.S. at 67-68, a court must also look to the direct oral and written communications between the government official accused of coercion and the third party entity plaintiffs describe as having been subject to government coercion. *See Vullo*, 602 U.S. at 191-93. Unvarnished speculation about "threats of official sanction or inducement" made by Defendants in a closed door conversation with Apple—even coupled with the Attorney General's public use of the words "demand" and "comply" to describe the interaction—do not survive the *Iqbal* plausibility standard. *See Iqbal*, 556 U.S. at 679.

Plaintiffs assert that thinly veiled, nonexplicit threats can be coercive, Opp. at 30 (citing *Bantam Books*, 372 U.S. at 68), and suggest that this supports the conclusion that Defendants' public statements implicitly threatened Apple with investigation and prosecution if it did not remove ICEBlock from the App Store, *id*. at 30, 32-33. But this claim stretches the law too far where Plaintiffs suggest that statements about ICEBlock and CNN should be understood as impliedly threatening enforcement actions against *Apple*.

11

Next, Plaintiffs posit that *Vullo* does not "require an exact readout of underlying communications to survive a motion to dismiss." Opp. at 31 (citing *Vullo*, 602 U.S. at 191). But Defendants nowhere insist on "an exact readout." Rather, the Government emphasizes that the content of the allegedly coercive conversation plays a critical role in any coercion analysis, and, here, Plaintiffs have not alleged any detail to show that an explicit or implied threat of investigation or criminal prosecution was made, publicly or privately, by the Government against Apple. *See Changizi*, 82 F.4th at 498 (describing plaintiffs' lack of "specific allegations of the content of behind-the-scenes communication" as a "bare assertion of conspiracy").

Plaintiffs largely push the facts of *Vullo* aside and attempt to analogize to *Backpage.com, LLC v. Dart*, 807 F.3d 229, 233 (7th Cir. 2015), Opp. at 30-31, but a comparison to each is telling. In *Backpage.com*, the Seventh Circuit found coercion based, in large part, on that the sheriff defendant communicated directly with the credit card companies he was accused of coercing and explicitly cited a specific money-laundering statute in his written communication directing the companies to cease taking actions he disfavored. 807 F.3d 229 at 231–32. And, in *Vullo*, the Supreme Court's determination that plaintiffs stated a coercion claim focused, first and foremost, on the NRA's allegations detailing the content of the direct written and oral conversations between Superintendent Vullo and the insurance entities she was accused of coercing, including her suggestions that the insurance companies could avoid infractions and reputational risk should they act as she desired. *See* Mot. at 22. Thus, the Supreme Court's finding that the NRA stated a plausible First Amendment coercion claim was rooted—not in factual assertions about statements made by the government *about plaintiff's* speech, but—in factual allegations detailing communications *between* the accused government official and the allegedly coerced *third party*. Nothing remotely similar is alleged here—indeed, *nothing* is alleged here.

In an attempt to recover from their speculation, Plaintiffs direct the Court's attention to the remaining First Amendment coercion considerations. *See* Opp. at 29-34. First, they turn to "the government official's authority," *Vullo*, 602 U.S. at 191, and assert that the Attorney

12

General and the Doe Defendants have "direct civil and criminal authority to investigate and prosecute Apple." Opp. at 29. But mere statements by an official with enforcement authority are not, somehow, innately coercive. Indeed, the Government is free to convey its own perspectives, which Apple may consider as it will. *See Vullo*, 602 U.S. at 188 ("A government official can share her views freely and criticize particular beliefs, and she can do so forcefully in the hopes of persuading others to follow her lead."); *see also Bantam Books*, 372 U.S. at 83 (distinguishing between permissible persuasion by government officials and impermissible attempts to coerce). Further undercutting Plaintiffs' claims that the Attorney General's vast enforcement authority means Apple would read her statements about Aaron and ICEBlock to threaten enforcement against Apple, Plaintiffs fail to allege any prior instance of the Attorney General suing Apple (or any platform) for failure to remove content upon request by the Government (or to remove content under any circumstance).

Turning next to "surrounding context," Plaintiffs return to their insistence that Defendants' statements, taken together—including statements by officials against whom Plaintiffs do not bring their coercion claim—resulted in Apple's purportedly reasonable understanding that Apple would face enforcement actions if ICEBlock remained in the App Store. Opp. at 32-33. Here, Plaintiffs insist, for the first time, that Defendants Lyons, Homan, and Noem "claimed they were coordinating with the Attorney General" and "vowed to investigate and criminally prosecute ICEBlock and other organizations that promoted ICEBlock." *Id*. at 32 (citing Amend. Compl. ¶¶ 98, 100–01, 104–05). This is not the case.[2]

---

[2] Plaintiffs allege only that Defendant Lyons criticized CNN's promotion of the App and, when asked whether the creation or use of ICEBlock violates the law, responded saying "We've been very aggressive with the Department of Justice. They've been great partners with us as far as prosecuting anyone that has impeded or interfered with ICE arrest. So that's what we're focusing on now with the Department of Justice – to see exactly what we can do." Amend. Compl. ¶ 98. Plaintiffs then allege that Defendant Homan called "for DOJ to investigate whether CNN crossed the line into criminal activity in covering ICEBlock. *Id*. ¶ 99. And, Plaintiffs allege that, when asked "whether ICEBlock and CNN were engaged in criminal wrongdoing, Homan stated 'The federal government has prosecuted people for assaulting ICE agents. We prosecuted people for doxing agents. So, DOJ is on top of this. So, I think DOJ will come to the point where these people will be held accountable. . . .I know Pam Bondi is all over it.'" *Id*. ¶ 100. Finally,

Regardless, this further mischaracterization of Defendants' statements does not tip the scale in favor of plausibility because Plaintiffs do not plead facts that would establish that statements directed at Aaron and CNN were "reasonably understood" by Apple as threatening enforcement actions against *Apple*. Indeed, ICEBlock remained in the App Store for months following Defendants' public criticism of ICEBlock and CNN's promotion of the App on June 30, 2025, suggesting Apple did not perceive a threat. *See* Amend. Compl. ¶¶ 98-109.

Finally, Plaintiffs turn to Apple's reaction—the reaction of the purportedly-coerced party, *Vullo*, 602 U.S. at 191—and assert that "Apple's unprecedented and immediate reaction" following the alleged conversation with Attorney General Bondi and the Doe Defendants "shows Defendants' conduct was understood as a threat." Opp. at 33. Plaintiffs once again label Apple's explanation for its content moderation decision as pretextual because ICEBlock was allegedly removed shortly after Defendants spoke with Apple, and because Apple allegedly misstated its own policy. *Id*. at 34 (citing Amend. Compl. ¶¶ 120–23 (noting a distinction between "can be used to harm such law enforcement officers…" used in Apple's Developer Portal message to Aaron, and "is likely to humiliate, intimidate, or harm a targeted individual or group" in Apple's Guidelines)). Plaintiffs allege both that Apple's explanation was pretextual, and that Apple's allegedly "pretextual" explanation indicates coercion. *Id*. Again, the Government responds by outlining that Apple's own explanation—conveniently dismissed by Plaintiffs as pretextual— explains that Apple acted after receiving relevant information about the potential threat posed to law enforcement safety. *See* Amend. Compl. ¶ 123; Mot. at 10. That Apple made its own judgment call based on information learned from law enforcement is an obvious alternative explanation that Plaintiffs fail to dispel. *See Ho*, 106 F.4th at 54.

---

Plaintiffs allege that Defendant Noem posted on X that ICEBlock "sure looks like obstruction of justice. . . If you obstruct or assault our law enforcement, we will hunt you down and you will be prosecuted to the fullest extent of the law." *Id*. ¶ 104. And Plaintiffs allege Noem stated that "DHS was 'working with the Department of Justice to see if we can prosecute [CNN] for [the ICEBlock story], because what [CNN is] doing is actively encouraging people to avoid law enforcement activities, operations, and we're going to actually go after them and prosecute them with the partnership of Pam [Bondi].'" *Id*. ¶ 105 (emphasis added).

14

Where Plaintiffs do not allege an action the Government threatened—explicitly or impliedly—to take against Apple should Apple opt to keep ICEBlock in the App Store, they fail to state a First Amendment coercion claim, and Plaintiffs' First Claim for Relief must be dismissed.

### III.    Plaintiffs Lack Article III Standing to Assert a First Amendment Retaliation Claim Against the Named Defendants.

Plaintiffs claim that Defendants Bondi, Noem, Lyons, and Homan "violated Aaron's First Amendment rights by threatening Aaron . . . with criminal prosecution based on his lawful development, distribution, and promotion of ICEBlock." Amend. Compl. ¶ 156. Plaintiffs allege that these alleged threats "constitute retaliation" and "were intended to deter Aaron from engaging in further protected speech[,]" *id*. ¶¶ 158-59.[3] But Plaintiffs' First Amendment retaliation claim must be dismissed on standing grounds where Plaintiffs fail to allege concrete injury traceable to Defendants' public statements, instead alleging subjective chill and self-inflicted injury based on unfounded speculation about future enforcement actions.

Defendants have already explained that Plaintiffs fail to sufficiently allege "specific causation," *Murthy*, 603 U.S. at 59, where they do not allege that each named Defendant characterized ICEBlock as unlawful and called for Aaron's criminal investigation and prosecution. *See* Mot. at 15-17. Indeed, Plaintiffs nowhere allege that Defendants Lyons, Homan,

---

[3] Defendants maintain that Plaintiffs' First Amendment retaliation claim is only brought on behalf of Plaintiff Aaron where Plaintiffs' "Second Claim for Relief" is brought for "Threatened Prosecution for Protected Speech," and alleges threats of criminal prosecution made towards Aaron for engaging in allegedly protected speech, but nowhere alleges that Defendants seek to bring criminal charges against ALL U Chart. *See* Amend. Compl. ¶¶ 156-161. Plaintiffs insist that ALL U Chart has standing because it owns the intellectual property associated with ICEBlock and the government's alleged actions have "directly harmed ALL U Chart's property interest and business." Opp. at 21. Plaintiffs do not address the fact that ICEBlock was free to download in the App Store, Amend. Compl. ¶ 8, therefore, ALL U Chart cannot claim lost profits when they have not pled facts establishing a monetary injury. Plaintiffs further assert that "threats against Aaron . . . are functionally threats against" ALL U Chart. Opp. at 21. Under Plaintiffs' incorrect characterization of ALL U Chart's standing as innately intwined with Aaron's, that Aaron does not have standing to bring a First Amendment retaliation claim against the named Defendants means ALL U Chart is also without standing. If Plaintiffs insist Aaron and ALL U Chart's standing rise together, they also fall together.

and Noem definitively announced Aaron's speech to be criminal or called for his investigation or prosecution. *See id.* at 16-17. Plaintiffs now mischaracterize alleged statements by the three officials as "vow[ing] to investigate and criminally prosecute ICEBlock and other organizations that promoted or facilitated the app," Opp. at 28. In reality, the alleged statements largely discuss actions by non-party CNN rather than Aaron, and merely suggest the uncontroversial proposition that facilitation of violence against law enforcement officers and interference with law enforcement operations is a crime, and the Department of Justice is best-equipped to investigate whether an action constitutes such facilitation or interference. *See* Amend. Compl. ¶¶ 98-100, 104-105; *see also* Mot. at 16-17. In other words, the statements do not say what Plaintiffs say they say. *Iqbal* requires treating well-pled facts as true, it does not require treating conclusory characterizations unsupported by those facts as true. 556 U.S. at 678.

As to Attorney General Bondi, even if Plaintiffs sufficiently allege (1) that she believed ICEBlock to be unlawful or warranting a closer look due to safety threats posed to law enforcement officers, *and* (2) that her publicly stated belief somehow impermissibly threatened Aaron's criminal investigation and prosecution, Plaintiffs do not allege *any* concrete steps taken to investigate or prosecute Aaron in the nearly seven months since the alleged statements were made, undercutting Plaintiffs' claims of present, concrete harm traceable to Attorney General Bondi's statements.

In an attempt to plead the concrete, cognizable injury necessary to establish standing, Plaintiffs allege that Aaron changed his behavior following Defendants' public statements. They describe Aaron's alleged "altered patterns"—namely, "retain[ing] criminal legal counsel, switch[ing] to encrypted communications, alter[ing] his international travel by not carrying his primary mobile device and coordinating travel plans with counsel, and abandon[ing] development of an Android version of ICEBlock[,]" Opp. at 22-23—as "affirmative steps [necessary] to avoid the risk of harm." *See id.* at 22 (citing *Meese v. Keene*, 481 U.S. 465, 475 (1987)). But, even assuming Aaron did change his behavior, such changes constitute self-inflicted injury where they are not rooted in an objective threat of certainly impending

16

enforcement actions by the Government. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417 (2013) ("Because respondents do not face a threat of certainly impending interception under § 1881a, the costs that they have incurred to avoid surveillance are simply the product of their fear of surveillance, and our decision in *Laird* makes it clear that such a fear is insufficient to create standing.") Indeed, Plaintiffs do not allege a single concrete action by the Government to initiate Aaron's criminal investigation or prosecution despite the passage of over six months since the Defendants allegedly threatened such actions, which undermines Plaintiffs' assertions that Defendants' words are causing Aaron concrete harm.

In a last-ditch effort to show that Aaron's altered behaviors are based on a continued "specific threat of criminal prosecution and loss of liberty," Opp. at 22—and not on pure speculation about enforcement actions—Plaintiffs argue that Defendants' alleged threats of enforcement were "credible" when made, *see* Opp. at 26-27. First, they assert that Defendants' failure to disavow their "threats" of enforcement against Aaron weigh in favor of standing. *Id*. at 26. Plaintiffs attempt to draw support from *Woodhull Freedom Foundation v. United States*, 948 F.3d 363, 374 (D.C. Cir. 2020), but the court in *Woodhull* found a substantial threat of future enforcement action where plaintiffs pointed to a specific law that could reasonably be understood to criminalize their conduct and the Government had not disavowed any intention to prosecute plaintiffs under that statute. Indeed, "[a] pre-enforcement challenge presupposes that there is a law that the plaintiff can challenge and that the government will enforce." *U.S. Telecom. Ass'n v. FCC*, 825 F.3d 674, 739 (D.C. Cir. 2016). Here, Plaintiffs do not identify an applicable law and challenge its potential future application to Aaron, nor do they allege the application of this unidentified law to other similarly situated individuals.

Next, Plaintiffs insist that Defendants' "threats" are "credible" because "the government has taken enforcement action against others engaged in the same type of speech." Opp. at 26 ("DHS issued subpoenas to Meta targeting the social media accounts of 'LBProtest' in California and 'MontCo Community Watch' in Pennsylvania"). Plaintiffs do not, however, allege that the Government has engaged in enforcement actions against developers of law enforcement tracking

17

applications—the individuals most similarly situated to Aaron. Further, Plaintiffs cannot establish standing based on their cursory insistence that they fall within a widespread "coordinated campaign to silence those who provide the public information about ICE activities." *See id.* (citing Amend. Compl. ¶ 160). Aaron simply cannot—in place of laying out well-pleaded allegations—associate himself with every individual or group interacting with ICE. And Plaintiffs' attempt to rely on Defendant Bondi's alleged coercion of Apple to remove ICEBlock to suggest that her "threats carry real consequences," *id.*, holds no weight where they have not pled facts showing that the removal of ICEBlock was anything other than an independent exercise of Apple's discretion.

Because Plaintiffs fail to allege concrete injury traceable to Defendants' public statements, they lack standing to bring a First Amendment retaliation claim and the Court must dismiss their Second Claim for Relief. And, where Plaintiffs fail to allege ongoing or imminent, concrete injury traceable to Government actions—in the form of an active bad-faith criminal investigation, retaliatory prosecution, or otherwise—they have not established standing for the prospective injunctive relief they seek. To be sure, even if Plaintiffs alleged an ongoing criminal prosecution pursuant to Defendants' statements, the presumption of prosecutorial regularity would require Aaron to prove the prosecution was retaliatory by showing it was not supported by probable cause. *See Hartman v. Moore*, 547 U.S. 250, 265–66 (2006). Ahead of this showing, any hypothetical criminal prosecution of Aaron could not be considered retaliatory Government action. Plaintiffs thus cannot seek injunctive relief to nip any potential prosecution in the bud, as they attempt to do here.

## IV.    Plaintiffs Fail to State a Legally Cognizable First Amendment Retaliation Claim.

Even if this Court finds Plaintiffs sufficiently alleged standing to bring a First Amendment retaliation claim against the named Defendants, Plaintiffs' "Second Claim for Relief," Amend. Compl. ¶¶ 152-163, fails on the merits. Plaintiffs fail to state a viable First Amendment retaliation claim against the named Defendants where they do not allege concrete adverse action by the Government—or the "adverse effects" of that action on Plaintiffs—in

18

response to Aaron's speech. Plaintiffs' mischaracterization of Defendants' statements about ICEBlock and its promotion as retaliatory actions in and of themselves does not withstand the D.C. Circuit's First Amendment retaliation test, which requires a plaintiff to show that "the defendant[s] took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again," *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016), *and* to "'allege that the retaliatory acts of the defendants *adversely affected them*[,]'" *Media* Matters, 138 F.4th at 581 (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005)).

Plaintiffs cite Defendants' public statements for the third time and insist that the statements themselves constitute adverse actions sufficient to deter a person of ordinary firmness. Opp. at 36-37. But, as Defendants have outlined, *see* Mot. at 24-25, these statements stand in stark contrast with the adverse Government actions historically recognized by the Supreme Court and the D.C. Circuit—actions including: arrest, *Nieves v. Barlette*, 587 U.S. 391 (2019); prosecution, *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006); employee termination, *Perry v. Sindermann*, 408 U.S. 593, 596–97 (1972); the initiation of an intrusive civil investigation, *Media Matters*, 138 F.4th at 581; and the termination of grant awards, *Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*, No. 25-cv-4505, 2026 WL 80796, at *15-16 (D.D.C. Jan. 11, 2026). Government speech, by contrast, even if strongly disapproving of a person's conduct, does not constitute First Amendment retaliation. *See Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1016 (D.C. Cir. 1991); *see also Block v. Meese*, 793 F.2d 1303, 1313 (D.C. Cir. 1986).

Then, in an attempt to satisfy the *Media Matters* objective ordinary firmness test, Plaintiffs claim Aaron's choices to retain criminal counsel and alter his behaviors by changing his travel patterns and halting his development of the Android version of ICEBlock, Opp. at 37 (citing Amend. Compl. ¶¶ 109, 135), as adverse effects resulting from Defendants' so-called retaliatory statements. But Plaintiffs point to a list of actions Aaron chose to engage in—his own behavioral preferences—rather than unavoidable adverse effects of government actions akin to those previously recognized by this court. This is distinct from *Media Matters*, where the court

found that an active retaliatory government investigation and sweeping civil investigation demand resulted in adverse effects in the form of significant burdens on the plaintiffs' newsgathering activities and operations. 138 F.4th at 581. *See also Am. Acad. of Pediatrics*, 2026 WL 80796, at *15 (finding adverse effects where termination of grant awards resulted in plaintiffs having to "shutter projects, lay off staff, and break commitments to partner organizations and sub-awardees.") Plaintiffs also allege adverse effects on ALL U Chart because the entity "has been unable to update or create new features for ICEBlock" or distribute "ICEBlock to new iPhone users," Opp. at 37 (citing Amend. Compl. ¶¶ 109, 131-134). But, again, these adverse effects are not the result of Defendants' public statements, but of Apple's removal of ICEBlock from the App Store.

Where Plaintiffs do not plausibly allege that Defendants engaged in concrete adverse action in response to Aaron's speech, and do not plausibly allege that retaliatory acts by Defendants adversely affected Plaintiffs, they fail to state a First Amendment retaliation claim and their Second Claim for Relief must be dismissed.

**CONCLUSION**

For all the reasons discussed herein, as well as those outlined in Defendants' opening brief, ECF No. 24-1, the Court should dismiss Plaintiffs' Amended Complaint.

Dated: April 24, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

JOSEPH BORSON
Assistant Branch Director
Federal Programs Branch

20

/s/ *Alexandra L. Yeatts*
ALEXANDRA L. YEATTS (CA Bar No. 358762)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 353-5677
Email: Alexandra.Yeatts@usdoj.gov

*Attorneys for Defendants*